Betsy Northrup vs. Paul L. Brigham, Jr., administrator,[1]
& others.[2]

No. 04-P-87.

Norfolk. October 28, 2004. - April 29, 2005.

Present: Armstrong, C.J., Dreben,& Katzmann,JJ.

*Practice, Civil,* Summary judgment. *Damages,* Quantum meruit. *Contract,*
Performance and breach, For services, Unjust enrichment, Promissory
estoppel. *Frauds, Statute of. Trust,* Constructive trust. .

A Superior Court judge incorrectly granted summary judgment in favor of the
defendant, the administrator of a certain decedent's estate, on a quantum
meruit claim brought by the plaintiff, who was the decedent's live-in
companion, caretaker, and personal assistant, alleging that the decedent had
failed to fulfil his part of an oral contract in which he promised to leave
the plaintiff his assets and property and also promised to sign a will in
return for her performance of substantial personal and professional services,
where the record supported that the elements of a contract had been
established sufficiently for the plaintiff to proceed to seek recovery on that
theory, even though the Statute of Frauds, G. L. c. 259, § 5, precluded the
enforcement of an oral agreement involving a promise to make a will for
purposes of her breach of contract claim [365-369]; the plaintiff could not,
however, pursue a theory of promissory estoppel or reliance in the absence
of an express contract granting property rights [369-370], nor a theory of
constructive trust or unjust enrichment, which was unsupported by the rec-
ord [370].

Civil action commenced in the Superior Court Department on
June 7, 2001.

The case was heard by *Patrick F. Brady*, J., on a motion for
summary judgment.

*Hanson S. Reynolds* for the plaintiff.

*Norman I. Jacobs* for the defendants.

Katzmann, J. Betsy Northrup appeals from a Superior Court

---

[1]Of the estate of Robert J. Lurtsema.

[2]Jacqueline MacLennan, Loraine Nordlinger, and David G. Lurtsema.

judge's grant of summary judgment to Paul L. Brigham, the administrator of the estate of Robert J. Lurtsema, and the intervener defendants.[3] Her amended complaint, filed pursuant to G. L. c. 230, § 1, alleged breach of contract, quantum meruit, and constructive trust and unjust enrichment. The plaintiff argues that there are disputed issues of material fact and that the judge below failed to credit all of her evidence and to draw all possible inferences in her favor. We reverse in part, affirm in part, and remand for further proceedings.

*Background.* We view the summary judgment record in the light most favorable to the plaintiff, the nonmoving party. The plaintiff and Lurtsema had a committed, romantic relationship for approximately ten years, until his death in June, 2000. Lurtsema was a composer, writer, and host of a public radio program. The plaintiff met him in 1982, and from that time until 1989, they were friends and saw each other on a regular but not exclusive basis. By 1990, they had become a couple, and from 1992 onwards, the plaintiff spent most of her time in Lurtsema's Wellesley home. From that point on, Lurtsema supported the plaintiff, though she continued to pay rent for her apartment in Cambridge until 1997. At that time, at Lurtsema's urging, she moved into his home in Wellesley where she lived until his death. After she moved, she did not contribute financially to the upkeep of Lurtsema's Wellesley residence.

From September, 1990, to September, 1991, the plaintiff was employed by others as a full-time legal temporary secretary, but from September, 1991, until March, 1995, she worked exclusively for Lurtsema. She worked without compensation, assisting him with every aspect of his professional life. Although she worked again for others from March 1, 1995, to January 1996, and from September, 1997, to December, 1999, she continued to perform extensive work for Lurtsema: she edited two books that Lurtsema published; prepared the texts of the musical scores which he narrated and recorded; transcribed music for his compositions; arranged for personal appearances, concerts, and travel; and conducted research for his personal appearances and

---

[3]Lurtsema died intestate. His mother was his sole heir at law, and the intervener defendants Jacqueline MacLennan, Loraine Nordlinger, and David G. Lurtsema are the beneficiaries of her estate.

courses. Besides helping Lurtsema in every aspect of his career, she also managed his investments. She discovered that one of his financial accounts had been the subject of fraud, and she worked actively to oversee and develop his financial portfolio. She also cared for him as he became increasingly ill after 1997 with idiopathic pulmonary fibrosis, a fatal degenerative lung disease, and drove him to and from work and other engagements when his vision deteriorated due to macular degeneration. In sum, during the bulk of her relationship with Lurtsema, the plaintiff devoted significant energy and work to him and his career.

From the mid-1990's on, Lurtsema requested that the plaintiff not work outside the house and that she be with him full-time to help him with his work and to help him with his failing health. As the plaintiff explained when deposed:

"Mr. Lurtsema asked me to do many things for him which were not consistent with a nine-to-five weekday job . . . . He wanted me available to him to do things when he wanted. . . . [T]his was very often inconsistent with full-time employment, and so I was not able to maintain an outside job and accede to Mr. Lurtsema's requests. And if he took vacations . . . — or weekends — he left at Sunday noon and he wanted to come back on Tuesday.

"So, therefore, he knew in his request that the actions that I would take were jeopardizing my own, or influencing my own security and my own preparations. Had there not been an understanding between us that he would be taking care of me, I would not have taken those actions."

The plaintiff said that she never had any conversations with Lurtsema about receiving compensation for the services she was rendering or specific hourly payments for specific tasks because there "was a general understanding, as it is between two people who are committed to each other, that each takes care of the other as best they can." "[I]t would have been gross and tacky" to discuss compensation. "Mr. Lurtsema knew from 1990 on that my financial and social situation was very different from his. He asked me to perform many services for him. He in no way would have ever asked that of me irresponsibly." On

several occasions during their relationship, the plaintiff, noting that she had been devoting her "efforts to his career, his health, his success, his financial well-being," expressed concerns to Lurtsema about her financial future in the event of his death. "And he said, don't worry about anything. Why are you so insecure? Most of this is going to be yours anyway. He said, this is our house. Most of what I — most of what I have is going to be yours anyway." "[H]e repeatedly assured me that most of what he had was mine and that he would take care of me, that he intended to provide for me for the rest of my life, and I had nothing to worry about," and she would not have to work when he was gone. "[W]e had an understanding. Mr. Lurtsema was a trustworthy, reliable person . . . . He had expressed his love for me many times, his commitment to me and his trust in me. And so that was relied on. And in effect, that's an expressed [*sic*] contract between us."

*Discussion.* On appeal, the plaintiff argues that summary judgment was inappropriate as the evidence and the inferences therefrom were sufficient to submit her claims of breach of contract, quantum meruit, and constructive trust and unjust enrichment to a jury. We address each of her claims in turn.

Summary judgment is appropriate only where there are no disputed issues of material fact and where the nonmoving party cannot prevail as a matter of law. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553-554 (1976). *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983). Where (as here) the moving party does not bear the burden of proof in the case, it must either submit affirmative evidence negating an essential element of the nonmovant's case or show that the nonmovant has no reasonable expectation of proving an essential element at trial. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). In reviewing the trial judge's decision to grant the defendants' motion, we make all reasonable assumptions and inferences in favor of the plaintiff and ask whether, under the facts so viewed, the plaintiff could prevail at trial. *Sklar* v. *Beth Israel Deaconess Med. Center*, 59 Mass. App. Ct. 550, 551 (2003). "A court should not grant a party's motion for summary judgment 'merely because the facts he offers appear more plausible than

those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.' " *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 370 (1982), quoting from *Hayden* v. *First Natl. Bank*, 595 F.2d 994, 997 (5th Cir. 1979). We evaluate each of the plaintiff's arguments through the lens of these principles.

The plaintiff's breach of contract claim alleges that she had entered into an oral contract with Lurtsema in which he promised to leave her his assets and property and also promised to sign a will and that, in return for those express promises, the plaintiff "performed substantial and valuable personal services as his caretaker and companion, and professional services as his personal assistant, his secretary, and his investment advisor." She alleges that "Lurtsema failed to sign a will or re-title the majority of his assets" to her, as she claims he promised to do.

Our analysis is informed largely by *Green* v. *Richmond*, 369 Mass. 47 (1975), where the plaintiff, who had lived with the decedent, sought recovery in quantum meruit for services rendered by her in reliance on the decedent's oral promise to leave a will bequeathing his estate to her. There, the court ruled that, while the oral agreement involving a promise to make a will "was not binding" under the Statute of Frauds, G. L. c. 259, § 5, the oral contract, determined not to be contrary to public policy, could provide the basis for the recovery in quantum meruit by the plaintiff of the fair value of her services. *Green, supra* at 49. Moreover, the value of the estate could be considered by the jury in its determination of the value of the plaintiff's services. *Id.* at 55-56. In the instant case, as in *Green*, the oral promise to make a will is unenforceable under the Statute of Frauds. However, unlike in *Green*, here there is a dispute as to whether an oral contract had been created between the plaintiff and the decedent. *Id.* at 50.

After consideration of the summary judgment record, and viewing the facts in the light most favorable to the plaintiff, we conclude that the defendant has not established "that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case." *Miller* v. *Mooney*, 431 Mass. 57, 60 (2000). At this stage, the plaintiff has presented sufficient evidence in

support of her theory that in return for the substantial services she provided to the decedent over the years, he had promised her the bulk of his estate. In making this determination, we do not consider actions and statements as strands in isolation, but as threads which, when viewed together, form the tapestry, often multi-textured, of interpersonal dynamics. In sum, the record supports that the elements of a contract — namely offer, acceptance, and an exchange of consideration or meeting of minds — have been established sufficiently to withstand summary judgment. See *Zarum* v. *Brass Mill Materials Corp.*, 334 Mass. 81, 85 (1956); *Quinn* v. *State Ethics Commn.*, 401 Mass. 210, 216 (1987). Accordingly, the plaintiff's claim in quantum meruit may proceed. *Green* v. *Richmond, supra* at 49-50. *Hastoupis* v. *Gargas*, 9 Mass. App. Ct. 27, 34-35 (1980).

The defendants urge that the plaintiff's deposition testimony demonstrates the absence of a quid pro quo, thereby defeating any contract claim. This argument does not give appropriate credit to the plaintiff's full testimony. She acknowledged that the nature of her relationship with Lurtsema was such that she did not seek or discuss the payment of hourly wages or compensation for the specific tasks or services that Lurtsema asked her to provide; however, she also stated, more broadly, that she had discussed her concerns with Lurtsema regarding her financial security, that he assured her that she did not need to worry, that he wanted her to have his house and the bulk of his estate, and that she would be sharing in their "common good." The defendants further claim that the plaintiff's actions were motivated by love and concern, not by an expectation or promise of financial remuneration in a contractual framework. However, this argument also ignores the full record and the plaintiff's testimony that she was also motivated by promises of financial security. Actions arising from a loving relationship and financial considerations are not mutually exclusive. That actions may arise in a loving relationship and also be protected under the rules of contract is well-established. See *Green* v. *Richmond*, 369 Mass. at 52-54; *Wilcox* v. *Trautz*, 427 Mass. 326, 330-333 (1998).

The defendants also argue that we should presume that any

services rendered by the plaintiff to Lurtsema were gratuitous because of the romantic relationship between them, citing to the Oregon case of *York* v. *Place*, 273 Or. 947 (1975). The Oregon case raises the question of whether it is reasonable to infer reliance on a promise of remuneration in the context of a loving relationship: "[I]n the normal course of human affairs persons living together in a close relationship perform services for each other without expectation of payment. Payment is not expected because . . . services are performed out of a feeling of affection or a sense of obligation . . . ." *Id.* at 950.[4] No Massachusetts court has applied the presumption. Such a presumption, particularly in the context of a contractual relationship, would appear to be inconsistent with the tenor of recent Massachusetts jurisprudence, which has held as follows:

> "[U]nmarried cohabitants may lawfully contract concerning property, financial, and other matters relevant to their relationship. Such a contract is subject to the rules of contract law and is valid even if expressly made in contemplation of a common living arrangement, except to the extent that sexual services constitute the only, or dominant, consideration for the agreement, or that enforcement should be denied on some other public policy ground."

*Wilcox* v. *Trautz*, 427 Mass. at 332 (footnote omitted). In any event, in the posture of summary judgment, where we assess the evidence in the light most favorable to the plaintiff, we do not apply a gratuitous services presumption here. Moreover, as the plaintiff asserts, contrary to the defendants' characterization, and in contrast to cases from other jurisdictions, her action is not premised on the recovery "for services ordinarily rendered by a wife in maintaining the home and in performing the *usual household duties*" (emphasis original). As she argues, those other cases are distinguishable because she is seeking recovery not for the "usual household duties," but for her extensive efforts that enabled Lurtsema to continue to work, travel, and

---

[4]Courts have wrestled with contract claims arising out of unmarried cohabitation. See generally Strasser, A Small Step Forward: The ALI Domestic Partners Recommendation, 2001 BYU L. Rev. 1135.

perform, and for financial planning and investment services that she provided for him and helped him to secure.[5]

In sum, the summary judgment record establishes that the plaintiff and Lurtsema formed an oral contract by which Lurtsema promised to leave her the bulk of his assets and property and promised to sign a will, in return for which the plaintiff performed substantial services. While the agreement amounted to an oral contract to make a will, and hence is unenforceable by reason of the Statute of Frauds, the plaintiff's suit may proceed for recovery in quantum meruit. *Green* v. *Richmond*, 369 Mass. at 49-50; *Hastoupis* v. *Gargas*, 9 Mass. App. Ct. at 34-35. Accordingly, summary judgment on the plaintiff's suit in quantum meruit should have been denied.

The plaintiff's invocation of the doctrine of promissory estoppel or reliance to counter the defendant's motion for summary judgment, however, must fail. The Supreme Judicial Court, in *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 760-761 (1978), "threw cold water on the expression . . . but not on the principle." *Greenstein* v. *Flatley*, 19 Mass. App. Ct. 351, 357 (1985). The doctrine is implicated when a promise was "intended to induce the reactions it elicited," and when "injustice [can] be avoided only by enforcement of the promise." *Simon* v. *Simon*, 35 Mass. App. Ct. 705, 711 (1994). While the summary judgment record supports the plaintiff's theory of a promise and reliance, we conclude that her lawsuit does not advance under the doctrine of promissory estoppel, premised as it is on the absence of an express contract. The Supreme Judicial Court has stated that it did "not adopt those portions of *Marvin* v. *Marvin*, 18 Cal. 3d 660 (1976), . . . which grant[s] property rights to a nonmarital partner in the absence of an express contract." *Wilcox* v. *Trautz*, 427 Mass. at

---

[5]In at least one case applying the gratuitous services presumption, the court noted that this presumption was rebuttable, and remanded the matter for further proceedings. *Roznowski* v. *Bozyk*, 73 Mich. App. 405, 409 (1977). There the plaintiff in a cohabitation relationship had not only helped with household chores, but also had rendered services for the defendant's business. As the court noted, "[t]he issue is a question of fact, to be resolved by consideration of all of the circumstances, including the types of services rendered, duration of services, closeness of relation of the parties, and the expressed expectations of the parties." *Id.* at 409.

331 n.3. It would thus appear that the plaintiff cannot pursue promissory estoppel as a theory to defeat summary judgment.

Finally, the plaintiff seeks recovery on a constructive trust and unjust enrichment theory. She argues that a constructive trust should be imposed on the decedent's estate because "the . . . estate has obtained property as a result of the [d]ecedent's abuse of the [p]laintiff's confidence by failing to follow through on his promises to provide for the [p]laintiff upon his death." "A constructive trust 'is imposed "in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained [a] by fraud or [b] in violation of a fiduciary relation or [c] where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information" ' " (emphasis omitted). *Kelly* v. *Kelly*, 358 Mass. 154, 156 (1970), quoting from *Barry* v. *Covich*, 332 Mass. 338, 342 (1955). The record does not support plaintiff's unjust enrichment claim, and summary judgment was properly granted as to this theory.[6]

The judgment is affirmed insofar as it denies relief on the plaintiff's claims of breach of contract and constructive trust and unjust enrichment, and is reversed and remanded for further proceedings on her quantum meruit claim.

*So ordered.*

---

[6]The plaintiff objects for the first time in her brief to this court that the defendants did not comply with Superior Court Rule 9A(b)(5) (1998), which requires that motions for summary judgment be accompanied by a statement of supporting material facts, set forth in numbered paragraphs, with references. She argues that the summary judgment motion should have been denied because of the deficiency in the pleading. We are unable to discern that plaintiff has suffered any real prejudice here, or that such error, objected to for the first time on appeal, warrants reversal. We see no reason to deviate from the general rule that objections not raised below are waived. See, e.g., *Bjorkman* v. *Suffolk Constr. Co.*, 42 Mass. App. Ct. 591, 595 (1997).