Lemire, James R., J.
The plaintiff, E.H. Perkins Construction, Inc. d/b/a Kane-Perkins Co. and Pandolf-Perkins Co. (“Perkins”), brought this action to recover damages for an alleged breach of contract. This matter is before the court on defendants, Consigli O’Connor, a Joint Venture, Consigli Construction Co., Inc. (“Consigli”), O’Connor Constructors, Inc. (“O’Connor”), and Federal Insurance Company’s[3] (“Federal Insurance”) (collectively “Consigli-O’Connor”) Motions for Summary Judgment. Additionally, defendant, Aggregate Industries, Inc. (“Aggregate”), and third-party defendant International Brotherhood ofTeamsters Local 170 (“Local 170”) have moved for summary judgment.
Perkins brought a complaint against Consigli O’Connor and Aggregate, which included counts for breach of contract, quasi-contract (quantum meruit), violation ofG.L.c. 93A, recovery under G.L.c. 149, §29, and intentional interference with contractual relations.[4] Subsequently, Consigli-O’Connor brought a third-party complaint against Local 170. Consigli-O’Connor also brought a cross-claim for contribution against Aggregate. For the following reasons, Consigli-O’Connor’s, Aggregate’s and Local 170’s Motions for Summary Judgment are DENIED.

SUMMARY JUDGMENT RECORD

The summary judgment record contains the following disputed and undisputed facts viewed in the light most favorable to the non-moving party.
Consigli-O’Connor was the general contractor on a construction project (“the project”) involving the Worcester Vocational High School. Perkins was a “ready mix concrete” supplier. Sometime in or about 2003, Consigli-O’Connor sent a written purchase order to Perkins “to furnish F.O.B. Jobsite All Concrete Ready-Mix Materials as specified and as further described in the Exhibit ”A" Schedule of Work, a copy of which is attached hereto and made part hereof in the amount of $827,000." Notwithstanding the fact that the purchase order contained signature lines to be executed by representatives of both Consigli-O’Connor and Perkins, it was never signed. There were, however, several letters, signed by Consigli-O’Connor, sent to Perkins referencing the project and the parties’ business relationship. In one letter, dated August 28, 2003, a representative from Consigli-O’Connor stated that “(w]e expect you to man the job and perform the work in accordance with your subcontract agreement.”
Beginning in July 2003, Perkins began to supply concrete to Consigli-O’Connor for use on the project. Perkins made a series of deliveries of concrete and invoiced Consigli-O’Connor accordingly. During this same time, members of Local 170 began picketing the project. Local 170 allegedly engaged in these picketing activities because Consigli-O’Connor used Perkins, a non-union employer, as a subcontractor. On August 29, 2003, in an effort to prevent the picketing activity from negatively impacting the project, Consigli-O’Connor enacted a “dual gate system” by reserving a specific gate for the exclusive use of Perkins. Consigi-O’Connor notified Local 170 of this arrangement and requested that it cease from picketing all gates on the project. There is some evidence, on the record before this court, that Perkins did not abide by the “dual gate system” and thereby used other gates on the project. As a result, Local 170 continued to picket all of the gates and caused serious delays to the project.
Perkins alleges that Aggregate, a competitor of Perkins, solicited Local 170 to picket the project. It is argued that Aggregate, a union-employer, sought to replace Perkins, a non-union employer, as a subcontractor for the project. The basis for this allegation is an alleged statement by James Prendergast (“Pre-ndergast”), a former employee of Aggregate, stating that certain employees at Aggregate encouraged Local 170 to picket the project. While Prendergast was employed by Aggregate at one time, it is not clear that he was employed by Aggregate when he made this statement.
On September 8, 2003, Consigli-O’Connor filed a charge against Local 170 with the National Labor Relations Board (“NLRB”) pursuant to 29 U.S.C. § 158(b)(4) (“Section 8(b)(4)”) of the National Labor Relations Act (“NLRA”)."[5] However, the NLRB never considered Consigli-O’Connor’s charge because Local 170 subsequently ceased its picketing activities. Con-sigli-O’Connor also filed a claim in the United States District Court for the District of Massachusetts, pursuant to 29 U.S.C. § 187 (“Section 303(b)”) of the Labor Management Relations Act (“LMRA”), against Local *122 170. This lawsuit was later dismissed, by the stipulation of the parties, without prejudice.
On November 4, 2003, a representative from Perkins sent a letter to Consigli-O’Connor requesting that Consigli-O’Conner inform Perkins of its intentions to whether it would allow Perkins to complete the project or whether it would be utilizing another concrete supplier. Consigli-O’Connor did not immediately respond. On November 6, 2003, Perkins’ employees noticed that there was another subcontractor providing concrete to Consigli-O’Connor. On or about November 7, 2003, after Perkins’ alleged failure to deliver concrete material to the project, Consigli-O’Connor notified Perkins that it was no longer the project’s concrete supplier. Instead, Consigli-O’Connor subcontracted with Aggregate as the project’s concrete supplier. Consigli-O’Connor’s stated reason for terminating Perkins’ services was that the concrete provided by Perkins was not adequate and that Perkins had difficulty servicing the project.
During the course of the parties’ relationship, Con-sigli-O’Connor paid Perkins the majority of its outstanding invoices. However, Consigli-O’Connor withheld $13,769.23 from the last invoice for costs incurred as a result of Perkins allegedly failing to deliver concrete on November 7, 2003.

DISCUSSION

I. Summary Judgment Standard

Summary judgment is appropriate when the summary judgment record shows that “there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); DuPont v. Comm’r of Corr., 448 Mass. 389, 397 (2007). A fact is “material” if it would affect the outcome of the suit. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is “genuine” where a reasonable finder of fact could return a verdict for the non-moving party. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), citing Anderson, 477 U.S. at 252. The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of his case at trial. Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716 (adopting reasoning contained in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), that “the burden on the moving party may be discharged by ‘showing’. . . that there is an absence of evidence to support the non-moving party’s case”). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trs. of the Coll. of the Holy Cross, 388 Mass. 16, 17 (1983); see Simplex Techs, Inc. v. Liberty Mut Ins. Co., 429 Mass. 196, 197 (1999). If the moving party has carried its burden, and the plaintiff has not responded with specific facts to establish a genuine, triable issue, the court grants the motion for summary judgment. Cmty. Nat'l Bank v. Dawes, 369 Mass. 550, 554 (1976); see Ng Bros, 436 Mass. at 644 (stating that, even where the facts are disputed, “summary judgment is still available if the party with the burden of proof at trial . . . fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor”), citing White v. Univ. of Mass. at Boston, 410 Mass. 553, 557 (1991).

II. Consigli-O’Connor’s Motion for Summary Judgment as to Perkins’ Complaint

Perkins brought an action against Consigli-O’Connor seeking damages for breach of contract (Counts I, III), quasi-contract (Counts IV-VI), violation of G.L.c. 93A (Counts VII, IX), and a claim, pursuant to G.L.c. 149, §29, against Federal Insurance (Count X).
A. Claims for Breach of Contract and Quasi Contract (Quantum Meruit)
An express contract is one in which the terms are declared by the parties either orally or in writing, at the time it is made. Grant v. Carlisle, 328 Mass. 25, 29 (1951). An implied-in-fact contract results from the nonverbal conduct of the parties. See Restatement (Second) of Contracts, §4. As highlighted by Consigli-O’Connor, the parties never signed the purchase order. Hence, Consigli-O’Connor relies on the Statute of Frauds as a defense to Perkins’ claim for breach of contract. The Massachusetts Statute of Frauds provides, in relevant part, that “a contract for the sale of goods . . . [must be signed by the] party against whom enforcement is sought.” G.L.c. 106, §2-201.
Although the purchase order was unsigned by Con-sigli-O’Connor, the summary judgment record contains several letters, signed by Consigli-O’Connor, discussing various aspects of the project. For purposes of determining whether the statute of frauds is met, a trial court can consider a series of writings taken together. See generally Harris v. Moynihan Lumber of Beverly, Inc., 1999 Mass.App.Div. 113 (1999). Accordingly, there are genuine issues of material fact as to whether the purchase order, combined with letters signed by Consigli-O’Connor, met the signature requirement of the statute of frauds. Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass.App.Ct. 582, 599 (2007).
*123 Moreover, the doctrine of quantum meruit will satisfy the statute of frauds to the extent that goods are received and accepted. Northrup v. Brigham, 63 Mass.App.Ct. 362, 369 (2005). The parties agree that Perkins delivered concrete to Consigli-O’Connor and that Consigli-O’Connor paid for a portion of these deliveries. It is disputed, however, as to whether Con-sigli-O’Connor was justified in withholding payment from the final invoice. Therefore, there are a genuine issues of material fact as to whether Consigli-O’Connor paid for all goods that were received and accepted. Id. at 369.
Further, the parties’ course of conduct indicates that there are genuine issues of material fact as to whether there was an implied contractual relationship. See Restatement (Second) of Contracts, §4 (discussing implied contracts). Indeed, the parties may have acted in accordance with and in reliance on the purchase order. For example, Consigli-O’Connor utilized a “holdback” provision of the purchase order which demonstrates its relevance. Thus, even if there was no enforceable written contract, the parties’ course of conduct indicates that there may have been an implied contract. Id.

B. Claims for Violation of G.L.c. 93A and Pursuant to G.L.c. 149, §29

With respect to the claim for violation of G.L.c. 93A,[6] there are genuine issues of material fact as to the circumstances surrounding Perkins’ termination from the construction site. As discussed in Section 11(A), there may have been an enforceable contract (either written or implied) between Perkins and Con-sigli-O’Connor that was breached. Piccicuto v. Dwyer, 32 Mass.App.Ct. 137, 137-38 (1992) (whether a defendant’s contract breach or other conduct amounts to an unfair and deceptive act under consumer protection statute ordinarily a question of fact for the trial court). A trier of fact could find that Perkins’ termination was unfairly motivated by pressure exerted by Local 170 as opposed to the purported workmanship issues.
Additionally, the manner in which Perkins was terminated could be a violation of G.L.c. 93A. There is evidence that Perkins requested to be notified, in writing, as to whether it would be allowed to complete the project. Nonetheless, Consigli-O’Connor allegedly hired Aggregate to complete the job without first notifying Perkins.
To the extent that Consigli-O’Connor argues that summary judgment should be granted for the surety, Federal Insurance, this court disagrees. General Laws chapter 149, §29, the public construction bond statute, allows recovery against a surety when there was an original contract between the general contractor and subcontractor. Further, even when there is no written contract between the general contractor and subcontractor, the subcontractor is entitled to recover from the surety the value of materials delivered and accepted. There are genuine issues of material fact as to whether there was a contract between Consigli-O’Connor and Perkins. Further, even if there was no enforceable written contract between the parties, there are genuine issues of material fact as to whether Perkins was fully compensated for work performed and material delivered. For the foregoing reasons, Consigli-O’Connor’s Motion for Summary Judgment as to Perkins’ Complaint is DENIED as to all counts.

III. Aggregate’s Motion for Summary Judgment as to Perkins’ Complaint and Consigli-O’Connor’s Cross-Claim

Perkins brought an action against Aggregate for intentional interference with contractual relations (Count XI) and violation of G.L.c. 93A (Count XII). Moreover, Consigli-O’Connor brought a cross-claim against Aggregate for contribution.

A. Perkins’ Claims for Intentional Interference with Contractual Relations and Violation of G.L.c. 93A

Perkins alleges that Aggregate’s conduct, in asking Local 170 to picket the project, constituted intentional interference with contractual relations (i.e., the alleged contract between Consigli-O’Connor and Perkins) and a violation of G.L.c. 93A. In response, Aggregate argues that federal law preempts these claims. Alternatively, Aggregate contends that there was no valid contract for it to interfere with and no admissible evidence that Aggregate ever requested the picketing.
In order to state a claim for intentional interference with contractual relations, a party must demonstrate that (1) he had a contract with a third party; (2) defendants knowingly induced the third party to break the contract; (3) the interference was motivated by improper means; and (4) plaintiff was harmed by defendants’ actions. Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 394-95 (2005). However, the United States Supreme Court has held that “(w]hen an activity is arguably subject to §7 or §8 of the [National Labor Relations] Act . . . the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.” San Diego Bldg. Trades Council v. Garon, 359 U.S. 236, 245 (1959). Section 7 of the NLRA protects the rights of employees to organize and to engage in collective bargaining. 29 U.S.C. 157. Section 8 of the NLRA prohibits certain unfair labor practices, including, but not limited to, engaging in secondary boycott activity. 29 U.S.C. 158. State law claims are not preempted when the activity regulated was merely a “peripheral concern.” Belkin, Inc. v. Hale, 463 U.S. 491, 498 (1983).
Under Section 7 of the NLRA, Local 170 had a right to picket the project. As discussed in more detail below, however, it is disputed as to whether these activities violated Section X’s prohibition of secondary *124 boycott activity. Perkins’ claims for intentional interference with contractual relations and violation of G.L.c. 93A concern the conduct of Aggregate. It is undisputed that Aggregate is a private employer. In sum, Perkins’ claims against Aggregate have nothing to do with the recognized right of Local 170 to picket. Rather, the claims against Aggregate concern Aggregate’s alleged wrongdoing in requesting that Local 170 picket its business competitor. Therefore, Aggregate’s preemption argument is unavailing. Accordingly, there are genuine issues of material fact as to whether Perkins had a contract with Consigli-O’Connor; whether Aggregate knowingly induced Con-sigli-O’Connor to break the contract; whether the interference was motivated by improper means; and whether Perkins was harmed by Consigli-O’Connor’s actions. Ayash, 443 Mass. at 394-95 (outlining elements of claim for intentional interference with contractual relations). This conduct, if found to be true, would also violate G.L.c. 93A. The tortuous interference that Perkins complains of is, at best, “peripheral” and thus falls outside the scope of the NLRA. Belkin, Inc., 463 U.S. at 498.

B. Consigli-O’Connor’s Cross-Claim for Contribution

The substance of Consigli-O’Connor’s cross-claim for contribution is that if it were found that Aggregate had conspired with Local 170 to cause Consigli-O’Connor to unlawfully terminate Perkins, then Con-sigli-O’Connor would be entitled to contribution from Aggregate. For the reasons discussed in Section III.A, there are genuine issues of material fact as to whether Aggregate intentionally interfered with contractual relations or violated G.L.c. 93A. Therefore, Aggregate’s Motion for Summary Judgment as to Perkins’ complaint and Consigli-O’Connor’s cross-claim is DENIED as to all counts.

IV Local 170’s Motion for Summary Judgment as to Consigli-O’Connor's Third-Party Complaint

Consigli-O’Connor brought a third-party complaint against Local 170 for contribution. Local 170 argues that it is entitled to summary judgment for the following reasons: Consigli-O’Connor and Local 170 are not joint tortfeasors within the meaning of G.L.c. 23IB, §l(a); Consigli O’Connor and Local 170 did not cause the same injury within the meaning of G.L.c. 23IB, § 1(a);[7] and the claim for contribution is preempted by the NLRA and the LMRA. In response, Consigli-O’Connor argues that its claim for contribution is properly brought pursuant to Section 303(b) of the LMRA
Section 303(b) of the LMRA expressly authorizes state and federal courts to award damages to any person injured by certain secondary boycott activities described in Section 303(a). Teamsters Union v. Morton, 377 U.S. 252, 258 (1964). Indeed, “the owners of a construction site who allege that they were directly injured by illegal secondary picketing have standing to sue under Section 303.” Abreen Corp. v. Laborers, 709 F.2d 748 (1st Cir. 1983). As accurately stated by Consigli-O’Connor, “Perkins has alleged that Consigli-O’Connor terminated its concrete supply purchase order because of the picketing by Local 170 and has sued Consigli-O’Connor for its lost profits.” Should this Court determine that Consigli-O’Connor terminated Perkins as a result of the picketing by Local 170, the damages Consigli-O’Connor will be ordered to pay are damages that resulted from the illegal picketing by Local 170. Further, as discussed above, there are genuine issues of material fact as to the circumstances surrounding Local 170’s picketing activities. Specifically, it is unclear whether these activities constituted a secondary boycott in violation of Section 8(b)(4) of the NLRA. Therefore, Local 170’s Motion for Summary Judgment as to Consigli-O’Connor’s third-party complaint is DENIED as to all counts.

ORDER

For the foregoing reasons, it is hereby ORDERED that Consigli-O’Connor’s, Aggregate’s, and Local 170’s Motions for Summary Judgment are DENIED as to all counts.

In its capacity as surety for Consigli-O’Connor.

Specifically, Perkins’ complaint contained the following counts: Count I) Breach of Contract against Consigli-O’Connor, a Joint Venture; Count II) Breach of Contract against Consigli; Count III) Breach of Contract against O’Connor; Count IV) Quasi-Contract against Consigli-O’Connor, a Joint Venture; Count V) Quasi Contract against Consigli; Count VI) Quasi Contract against O’Connor; Count VII) Violation of G.L.c. 93A against Consigli-O’Connor, a Joint Venture; Count VIII) Violation of G.L.c. 93A against Consigli; Count IX) Violation of G.L.c. 93A against O’Connor; Count X) Violation of G.L.c. 149, §29 against Federal Insurance; Count XI) Intentional Interference with Contractual Relations against Aggregate; and Count XII) Violation of G.L.c. 93A against Aggregate.

Section 8(b)(4)(ii)(B), the so-called secondary boycott provision, prohibits a union from picketing a secondary employer in order to cause it to cease doing business with a primary employer with whom the union has a labor dispute.

General Laws chapter 93A, §11 states that “[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice ... [may] bring an action in the superior court...”

Pursuant to G.L.c. 231B, §l(a), “where two or more person become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recorded against all or any of them.”