Troy, Paul E., J.
The plaintiff, Margaret Schuster (Schuster), claims that the defendants solicited investment deposits, invested her funds in securities that were high risk — despite her conservative investment objectives — and acted in concert to defraud her and conceal the riskiness of the investments. The complaint alleges the following: common law fraud — count I; breach of fiduciary duty — count II; breach of contract — count III; negligence — count IV; violation of Racketeer Influenced and Corrupt Organizations Act (R.I.C.O.) — countV; violation of G.L.c. 93A — count VI; violation of G.L.c. 110A, §410 — count VII; and violation of § 10(b) and Rule 10b-5 of the 1934 Securities Act — count VIII. Defendant William Dacey (Dacey) now moves to dismiss Schuster’s complaint or, in the alternative, to stay the claims pending arbitration. For the reasons discussed below, Dacey’s motion to dismiss or stay the plaintiffs claims pending arbitration is DENIED in part and ALLOWED in part.
BACKGROUND
The following facts are drawn from Schuster’s complaint, the New Account Agreement (the Agreement), which contains the arbitration clause at issue, and the return of service indicating where and when Dacey was served with the complaint.[3]
Defendant Linsco/Private Ledger, Corp. (LPL) is an investment firm. At all relevant times, Dacey worked for LPL as an investment broker. On December 21, 1998, Dacey solicited Schuster to deposit $10,000 in an investment account, to be managed by Dacey. Schuster deposited the money into the account on December 28, 1998. Dacey, as well as defendants Michael Healey, Sean Healey, and Frederick Sundín (Sundín), then met with the plaintiff and convinced her to invest in Stansbury stock — a high risk investment— even though they knew or should have known that Schuster sought conservative investments and that her investment experience was extremely limited. None of the defendants informed Schuster that the investment was high risk.
Over the course of the next year (1999), the plaintiff deposited additional funds into the investment account.[4] Dacey invested the plaintiffs money in Stansbury promissory notes, shares of Stansbury stock, and shares of Viva Gaming and Resort (Viva Gaming) stock, another high risk investment. From 1999 through 2003, Dacey, the Healeys, and Sundín continually informed Schuster that her investments were safe, prudent, and suitable for her investment objectives, repeatedly concealing the nature and extent of Schuster’s investment risks.[5]
On June 6, 2002, Schuster signed the New Account Agreement with LPL. The agreement included an arbitration clause stating, in part, that “in consideration of opening one or more accounts for [Schuster], [Schuster] agree[d] that any controversy between [her] and LPL and/or [her] Representative [at LPL], [William Dacey], arising out of or relating to [Schuster’s] account, transactions with or for [her], or the construction, performance, or breach of this agreement, whether entered into prior, on, or subsequent to the date hereof, shall be settled by arbitration in accordance with the rules ... of the National Association of Securities Dealers, Inc.”
Schuster’s investments ultimately became worthless and she lost all the money she invested. In 2004, Schuster’s friend, who works in the banking and securities business, told her that she had a cause of action agains't the defendants. In light of her lack of investment experience, Schuster alleges that she did not know, nor could she have known, of her cause of action before 2004. She filed this complaint on February 9, 2007.
On May 9, 2007, Harold March, a constable for the Commonwealth, served Dacey with a summons and a copy of the complaint by leaving both documents at 102 Vinton Street, Melrose. The return of service specifically states that this address was Dacey’s last and usual place of abode. It also states that the following day, March sent another copy of the summons and complaint to Dacey at the same address via first class mail.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well pleaded factual allegations of the complaint and make all reasonable inferences which may be drawn in the plaintiffs favor. Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt “that the plaintiff can prove no set of facts in support of her claim which would entitle [her] to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977).
*177 Dacey argues that the court should dismiss the complaint for insufficient service of process, pursuant to Mass.R.Civ.P. 12(b)(5); failure to state a claim upon which relief can be granted, pursuant to Mass.R.Civ.P. 12(b)(6);[6] and because the plaintiff is obligated to submit the claims to arbitration, pursuant to the 2002 Agreement. In the alternative, Dacey seeks a stay of the litigation pending arbitration.
I. Insufficient Service of Process
First, Dacey argues that the complaint should be dismissed because service of process did not comply with Mass.R.Civ.P. 4(d)(1), which states that an individual can be served by leaving copies of the summons and complaint at the individual’s “last and usual place of abode.” Mass.R.Civ.P. 4(d)(1). Specifically, Dacey argues that he lived at the Vinton Street address from 1993 to July 14, 2006, after which he moved into his sister’s home in North Attleboro, and thus he was not served at his last and usual place of abode, as required by the rule. He then argues that Schuster cannot effectuate proper service now, as the ninety-day service period has long passed, and Schuster cannot show good cause for delay of service.
A proper return of service stating that a summons and complaint were served to a defendant at his last and usual abode is conclusive; a defendant’s contention that he was not living at the address where he was served is insufficient to overcome this conclusion. Smith v. Arnold, 4 Mass.App.Ct. 614, 615-16 (1976) (service of process not insufficient where return indicated that service was made at defendant’s last and usual place of abode and defendant contended that he had moved from that address a year earlier); see also Warren Five Cents Sav. Bank v. Foreign Car Ctr., Inc., 50 Mass.App.Ct. 1112, *2 (2001) (defendant’s presentation of uncontroverted evidence that service was improper would be irrelevant where sheriffs return indicated that he was properly served). Here, the return of service plainly indicates that Dacey was served at. his last and usual address. Because the return conclusively establishes sufficiency of service of process, Dacey’s argument that the complaint should be dismissed because he was not living at 102 Vinton Street at the time of service fails.[7] See id.
II. Failure to State a Claim Upon Which Relief Can Be Granted
A. Statute of Limitations
Next, Dacey argues that Schuster’s complaint fails to state a claim upon which relief can be granted because her claims are time barred by the applicable statute of limitations. Specifically, Dacey notes that the alleged transactions occurred in 1998 and 1999 and that the plaintiff did not file her complaint until 2007. Dacey then states that the statute of limitations for tort claims — including claims for fraud, breach of fiduciary duty, and negligence — is three years; the statute of limitations for contract claims is six years; the statute of limitations for claims brought under G.L.c. 93A, G.L.c. 110A, §410, and R.I.C.O. is four years; and claims brought under § 10(b) and Rule 10b-5 must be brought within one year after the discovery of the violation and within three years after such a violation. Thus, Dacey contends that the statute of limitations lapsed, at the latest, in 2005 — two years before Schuster filed the complaint. Dacey further argues that Schuster cannot avail herself of the so-called “discovery rule,” which tolls the statute of limitations until a plaintiff learns or should have learned of her alleged injuries.
The court agrees with Dacey’s assertion that Schuster’s claims are time barred under the relevant statutes of limitation, but does not conclude that Schuster cannot avail herself of the discovery rule. Under the discovery rule, the statute of limitations does not start to run until the plaintiff discovers, or reasonably should have discovered, that she has been harmed or may have been harmed by a defendant’s conduct. Koe v. Mercer, 450 Mass. 97, 101 (2007). The Court developed the rule because of the inherent unfairness in barring a plaintiffs claim before the plaintiff knew or reasonably should have known that she was harmed. Aiello v. Aiello, 447 Mass. 388, 403-04 (2006).
In her complaint, Schuster alleges that Dacey repeatedly encouraged her to invest in Stansbury stocks and told her that the investments were appropriate, all the while knowing that she sought conservative investments and that investment in the Stansbury stock was high risk. Further, she avers that, in light of her lack of investment experience, she did not know, nor could she have known that she had a cause of action against the defendants before 2004, when she was so informed by her friend who works in banking and securities. Considering these allegations, the court cannot say that it is “beyond a doubt” that Schuster can prove no set of facts in support of her claim that she did not, nor could have, known of her injuries until 2004, and thus could invoke the discovery rule. See Koe, 450 Mass. at 101; Nader, 372 Mass. at 88. As such, Dacey’s argument that the claims should be dismissed because they are time barred and Schuster cannot avail herself of the discovery rule fails.
B. Fraud
Dacey also argues that Schuster’s complaint must be dismissed for failure to state a claim upon which relief can be granted because Schuster failed to plead fraud with sufficient particularity, as required by Mass.R.Civ.P. 9(b). Under Rule 9(b) a plaintiff claiming fraud or deceit must allege the content of the fraudulent statement; who made the statement and when and where it was made; the falsity of the statement; the defendant’s knowledge of the falsity; that the statement was made to induce the plaintiffs reliance; the materiality of the statement; and the plaintiffs reliance thereon. Friedman v. Jablonski, 371 Mass. *178 482, 488-89 (1976); Equip. & Sys. for Indus., Inc. v. Northmeadows Constr. Co., Inc., 59 Mass.App.Ct. 931, 931-32 (2003). Although a bare statement that a defendant’s fraudulent conduct harmed the plaintiff is, on its own insufficient to satisfy Rule 9(b), the particularity requirement must be read with Mass.R.Civ.P. 8(a), which mandates that a pleading contain a short and plain statement of the claim and does not require a claimant to detail all the facts on which her claim is based. Lazzaro v. Holladay, 15 Mass.App.Ct. 108, 110-11 (1983).
Here, the complaint alleges that from 1999 to 2003, Dacey, the Healeys, and Sundin encouraged Schuster to invest in Stansbuxy stock and repeatedly assured her that the investments were appropriate for her investment goals. Thus, Schuster satisfies the requirement that she allege the content of the fraudulent statements, who made the statements, and when the statements were made.[8] See Friedman, 371 Mass. at 488-89; Equip. & Sys. for Indus., Inc., 59 Mass.App.Ct. at 931-32; see also Evans v. Lorillard Tobacco Co., 2007 WL 796175, *13 [22 Mass. L. Rptr. 91] (Suffolk Super. Feb. 7, 2007) (Troy, J.) (plaintiffs allegation that defendant made misrepresentations between 1961 and 1967 sufficient to satisfy Rule 9(b) requirement that plaintiff specify when fraud occurred); Porcaro v. Chen, 2004 WL 3091558, *4 (Middlesex Super. Nov. 30, 2004) (MacLeod, J.) (fact that plaintiff did not identify the fraudulent statements verbatim does not constitute a failure to satisfy Rule 9(b) requirement that plaintiff specify the content of the statement). She also alleges that the investments were not suitable, that the Stansbuxy stock was highly volatile, and that Dacey, the Healeys, and Sundin were aware of both these facts when they encouraged her to invest and assured her that the investments were sound. Thus, Schuster satisfies the requirement that she allege the falsity of the statements and Dacey’s knowledge of the falsify. See Friedman, 371 Mass. at 488-89; Equip. & Sys. for Indus., Inc., 59 Mass.App.Ct. at 931-32. Schuster also alleges that Dacey, the Healeys, and Sundin made these misrepresentations for their benefit, and at her expense. Thus, she satisfies the requirement that the misrepresentations were made to induce her reliance. See id. Finally, she claims that, as result of the misrepresentations, she continued to deposit money into her investment account and approve investments in Stansbuxy stock, and ultimately lost all of her money. Thus, she satisfies the requirement that the misrepresentations were material, and that she relied on them. See id.; see also Nat’l Car Rental Sys., Inc. v. Mills Transfer Co., 7 Mass.App.Ct. 850, 851 (1979) (misrepresentation material where it is shown that it was one of the principal reasons that plaintiff took particular action).
The complaint does not, however, allege where Dacey, the Healeys, and Sundin made these xxiisrep-resentations; although the complaint states that the solicitations and sales were initiated at Dacey’s office in Braintree Cooperative, and that Dacey, the Healeys, and Sundin repeatedly assured Schuster that her investments were sound, it does not specify where the defendants convinced Shuster to invest in the stocks, or where they assured her that the investments were appropriate. In light of this failure, Schuster does not completely satisfy the particularity requirement under Rule 9(b) and Dacey’s motion to dismiss must, be allowed. See id. Nonetheless, Schuster has moved to amend the complaint and it is within the court’s discretion to grant such a request. Jessie v. Boynton, 372 Mass. 293, 295 (1977). Accordingly, the dismissal is without prejudice and Schuster has twenty days from the date of this decision to file an amended complaint setting forth her claims of fraud with the requisite particularity. See id.
C.G.L.c. 93A
Dacey also argues that Schuster’s 93A claims must be dismissed because a plaintiff making a 93A claim must satisfy the requirements of Mass.R.Civ.P. 9(b), and plaintiff has failed to meet the requirements of Rule 9(b) here. Dacey is mistaken; although 93A actions allege unfair and deceptive trade acts or trade practices, thereby falling into the general categoxy of fraud, “the concept of xmfair or deceptive acts or practices goes far beyond the scope of a common law act for fraud and deceit, and does not necessarily require similar pleading.” U.S. Funding, Inc. of Am v. Bank of Boston, 28 Mass.App.Ct. 404, 407 (1990); see also Li’l Peach of Mass. v. Prendergast 1996 WL 1251389, *2 n.4[6 Mass. L. Rptr. 43] (Hampden Super. Aug. 15, 1996) (Gersheng-orn, J.) (Massachusetts courts do not impose Rule 9(b) requirements on 93A claims). Thus, Schuster’s failure to satisfy Rule 9(b) in relation to her 93A claim does not require its dismissal.[9] See id.
D.§ 10(b) and Rule 10b-5 of the 1934 Securities Act
Because Schuster has voluntarily withdrawn this claim, the court need not address it.
E.R.I.C.O.
Dacey also argues that the complaint should be dismissed because Schuster failed to plead the defendants’ alleged violation of R.I.C.O. with sufficient particularity, as required by Mass.R.Civ.P. 9(b). The court, however, is not aware of, nor does the defendant point to, any case law indicating that civil R.I.C.O. claims are subject to Mass.R.Civ.P. 9(b). Thus, the court declines to dismiss the plaintiffs R.I.C.O. claim on the basis that it does not meet the requirements set forth under the rule.
Nonetheless, under federal case law, where a plaintiffs civil R.I.C.O. claim alleging mail or wire fraud is subject to Fed.R.Civ.P. 9(b), courts do not automatically dismiss the claim because the plaintiff failed to satisfy Rule 9(b). New England Data Servs., Inc. v. Becher, 829 F.2d 286, 289-90 (1st Cir. 1987). Rather, courts must first determine whether the *179 plaintiffs claim, as presented, warrants the allowance of discovery and an opportunity to amend the defective complaint. Id. Such discovery is warranted where a plaintiff provides an outline of a general scheme to defraud, but because of the plaintiffs lack of access to the defendants’ specific actions and communications, is unable to provide more detailed information regarding the defendants’ alleged violations. See id. (R.I.C.O. claim should not be automatically dismissed for failure to satisfy Fed.R.Civ.P. 9(b) where facts underlying the claim are “particularly within the defendant’s knowledge”); see also Davila Uviles v. RYS Int’l Corp., 443 F.Sup.2d 233, 239 (D.Puerto Rico 2006) (alleged R.I.C.O. violations did not satisfy Fed.R.Civ.P. 9(b) hut court declined to dismiss claim because there were multiple defendants who communicated among themselves, and it would place unrealistic burden on the plaintiff to know the content of the communications and when they occurred). Thus, even if the court determined that Mass.R.Civ.P. 9(b) applied to Schuster’s R.I.C.O. claim, and that she failed to satisfy the rule, the court would allow discovery rather than dismiss the claim altogether. See id.; see also New England Data Servs., Inc., 829 Mass. F.2d at 289-90.
F.Breach of Fiduciary Duiy
Dacey argues that Schuster’s complaint must be dismissed for failure to state a claim upon which relief can be granted because he did not owe her a fiduciary duty. The following factors are considered when determining whether there is a fiduciary relationship between an investor and broker: the degree of discretion the investor entrusted to the broker; whether the investor “almost invariably followed” the broker’s advice; whether the investor lacks investment experience; and whether there are social or personal ties between the investor and broker. Patsos v. First Albany Bank, 433 Mass. 323, 333-35 (2001). Here, both the complaint and the New Account Agreement indicate that Dacey was Schuster’s broker.[10] Further, the complaint alleges that Dacey had control over Schuster’s investment account; he advised her to invest in Stansbuiy stock and she trusted him and followed this advice; and she lacked investment experience. Assuming, as the court must, that these allegations are true, Fairneny, 422 Mass. at 470, Schuster has alleged sufficient facts to support her claim that Dacey owed her a fiduciary duly and thus the claim should not be dismissed. See Patsos, 433 Mass. at 333-35.
G.Negligence
Dacey also argues that Schuster’s complaint must be dismissed because she only alleges economic damages and purely economic losses are unrecoverable in tort and strict liability actions under the economic loss doctrine. The economic loss doctrine bars recovery on a negligence claim in the absence of personal injury or physical damage to property. FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993). Massachusetts law, however, recognizes an exception to the doctrine: a plaintiff who has suffered only economic injury may recover against a defendant who has committed the tort of negligent misrepresentation. Nota Constr. Corp. v. Keyes Assoc., Inc., 45 Mass.App.Ct. 15, 20 (1998). To prove negligent misrepresentation a plaintiff must demonstrate that the defendant (1) in the course of his business; (2) supplied false information for the guidance of others; (3) in their business transactions; (4) causing and resulting in pecuniary loss to those others; (5) by their justifiable reliance on the information; and (6) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. Golber v. Baybank Valley Trust, Co., 46 Mass.App.Ct. 256, 257 (1999).
Schuster’s complaint alleges that Dacey was her investment broker. She also alleges that he advised her to invest in Stansbury stock and told her that the investments were appropriate, even though he knew that these stocks were high risk, and that Schuster had conservative investment goals. Further, the complaint alleges Schuster relied on this guidance, that such reliance was reasonable because she had no investment experience and trusted Dacey, and that as a result of this guidance, Schuster lost all the money that she invested. In light of these allegations, Schus-ter has alleged sufficient facts to support her contention that Dacey engaged in negligent misrepresentation, see id., and thus her negligence claim is not barred by the economic loss doctrine. See Nota Constr. Corp., 45 Mass.App.Ct. at 20.
H.Breach of Contract
Dacey argues that the complaint should be dismissed because it fails to allege that a valid agreement existed between Schuster and Dacey. To prove a breach of contract claim, a plaintiff must demonstrate that (1) the parties entered into a valid and binding agreement; (2) the defendant breached the terms of the agreement; and (3) the plaintiff suffered damages as a result of the breach. Singarella v. Boston, 342 Mass. 385, 387 (1961); Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999). A valid contract exists where there is an offer; acceptance of the offer; and an exchange of consideration or meeting of the minds. Northrup v. Brigham, 63 Mass.App.Ct. 362, 367 (2005).
Here, the complaint alleges that Dacey offered to manage Schuster’s investment accounts, Schuster accepted the offer, and, in exchange for his services, deposited money into the account and gave Dacey permission to manage her investments. The complaint also alleges that Schuster only sought conservative investments and that Dacey did not adhere to these wishes when he invested her money in Stansbuiy stock, a high risk investment. Finally, the complaint alleges that Schuster lost all the money she invested as a result of Dacey’s actions. In light of these allegations, Dacey’s argument that the complaint does not allege sufficient facts to support Schuster’s claim that a valid contract existed, that Dacey breached that contract, and that Schuster suffered damages as a result of the breach, *180 fails. See Singarella, 342 Mass. at 387; Northrup, 63 Mass.App.Ct. at 367; Michelson, 167 F.3d at 720.
I. Dismissal of Sisters’ Claims
Dacey also argues that the claims that Schuster alleges on behalf of her sisters, Rosemonde Vleeshouwer (Vleeshouwer) and Eda Barsoun (Barsoun), must be dismissed because the complaint does not include any allegations that relate to either sister. The court agrees. Even accepting the entire complaint as true, Vleeshouwer and Barsoun fail to state a claim upon which relief can be granted because, other than the caption, there is absolutely no mention of either sister in the complaint, much less any allegations that they sustained injuries as a result of the defendants’ actions. Because of the complete lack of allegations, there is “no doubt that [Vleeshouwer and Barsoun] can prove no set of facts in support of their claims which would entitle them to relief,” and thus the claims brought on their behalf must be dismissed. See Nader, 372 Mass. at 98.
III. Arbitration
Finally, Dacey argues that even if the court does not dismiss the complaint for insufficient service of process or failure to state a claim, it should compel arbitration because Schuster’s claims are subject to the arbitration clause contained in the New Account Agreement. Schuster does not dispute the applicability of the arbitration clause to Dacey,[11] however, she contends that agreement is unenforceable because Dacey fraudulently induced her to sign the agreement, and exerted undue influence over her.
Generally, the party contesting the validity of the agreement as a result of fraudulent inducement or undue influence bears the burden of proof. However, where there is a fiduciary relationship between the parties, the burden shifts to the fiduciary to establish that the transaction did not violate his obligations. Cleary v. Cleary, 427 Mass. 286, 295 (1998). As noted above, the plaintiff has alleged sufficient facts to support her claim that Dacey owed her a fiduciary duty. See Patsos, 433 Mass. at 333-35. Furthermore, there is no evidence on the record from which the court can conclude that Dacey fulfilled his fiduciary obligations to Schuster. Because of this lack of evidence, the court cannot, at this stage of the litigation, find that Dacey did not fraudulently induce Schuster, or subject her to undue influence, when she signed the New Account Agreement, and the arbitration clause contained within it. See Cleary, 427 Mass. at 295. Thus, Dacey’s motion to compel arbitration must be denied. Because additional discovery may reveal the absence of fraudulent inducement and undue influence, Dacey is not precluded from bringing a motion to compel arbitration at a later stage in the proceedings, if appropriate.
ORDER
For the foregoing reasons, is is hereby ORDERED that Defendant William Dacey’s Motion to Dismiss is DENIED as to counts II, III, IV, v. and VI; ALLOWED as to counts I and VIII, count I is dismissed without prejudice; The Motion to Compel or Stay Litigation Pending Arbitration is DENIED without prejudice.
All claims brought on behalf of Rosemonde Vleeshouwer and Eda Barsoun are DISMISSED.

 The court notes that it does not normally consider any facts that are not set forth in the complaint when addressing motions to dismiss. The court did so here, however, as the complaint does not address any facts related to the Agreement and the arbitration clause, and the date and content of the clause are not in dispute, and the complaint does not address Dacey’s service of process, and the content of the return of service, including the address at which Dacey was served and the date of the service, are not in dispute.

 In addition to the $ 10,000 deposit on December 28, 1998, the plaintiff also deposited the following monies into her investment account: $10,000 on June 2, 1999; $5,000 on June 3, 1999; $10,000 on June 4, 1999; $71,000 on June 8, 1999.

 Schuster also alleges that Dacey, the Healeys, and Sundin’s misrepresentations continued up to the date on which the complaint was filed.

 Specifically, Dacey argues that the plaintiffs complaint is barred by the relevant statutes of limitations, and fails to set forth a claim for fraud; violation of G.L.c. 93A; violation of §10(b) and Rule 10b-5; violation of R.I.C.O.; breach of fiduciary duty; negligence; and breach of contract.

 Because the court finds that the complaint should not be dismissed for insufficient service of process, it does not reach Dacey’s argument that Schuster cannot effectuate proper service now, as the ninety day service period has passed, and Schuster cannot show good cause for delay of service.

 Dacey argues that his representations that the investments were safe and appropriate, that they would yield a high return, and that the Stansbury stock was a good investment do not constitute a claim of fraud because they are statements of opinion, which are not actionable in fraud. The court notes that a statement of opinion may be actionable if it is made in a situation where “the parties to the transaction are not on equal footing, but where one has, or is in a position where he should have, superior knowledge concerning the matters to which the representations relate.” Zimmerman v. Kent 31 Mass.App.Ct. 72, 80 (1991). Here, the complaint alleges that Schuster had no knowledge of investments, while Dacey was an investment broker. Thus, even if the statements were deemed to be opinion, the allegations are sufficient to support a claim for fraud. See id.

 The court also notes that, given its ruling allowing the plaintiff to amend her complaint, it would not dismiss the plaintiffs 93A claims even if they were subject to the requirements of Rule 9(b).

 The Agreement states that Dacey was Schuster’s broker-representative at LPL.

 In her opposition to LPL’s motion to dismiss, she expressly acknowledges that “LPL and William Dacey” are covered under the terms of the agreement.