## Sharon M. Sutton *vs*. Charles B. Valois.

No. 04-P-1252.

Worcester. October 3, 2005. - May 10, 2006.

Present: Lenk, Smith, & Gelinas, JJ.

*Cohabitation,* Nonmarital. *Real Property,* Tenancy in common. *Unjust Enrichment. Trust,* Resulting trust, Constructive trust. *Loan.*

Discussion of remedies available to unmarried cohabitants seeking resolution of property issues. [262-263]

In an action between unmarried former cohabitants, a probate judge properly concluded that the plaintiff had no interest in certain real estate she owned as a tenant in common with the defendant, where the plaintiff would be unjustly enriched if she could recover any of the funds the defendant paid for a deposit on the property, given that the defendant had contributed all the money for the acquisition of the property based on the plaintiff's promise to marry and have a family with him, a promise that she broke soon after the purchase [263-266]; likewise, the plaintiff could not prevail on a theory that the defendant held a share of the property for her in constructive or resulting trust, where nothing in the record suggested that the defendant engaged in fraud, either on the plaintiff or on the court, with respect to obtaining full title to the property or by refinancing the existing mortgage at more favorable rates [266-267].

Nothing in the record of a probate action directed this court to a conclusion that the judge committed clear error in holding the plaintiff to a legal obligation to repay a loan from the defendant, as well as other funds wrongfully diverted from the defendant and monies that she could not have reasonably expected were hers to keep. [267-268]

Complaint filed in the Worcester Division of the Probate and Family Court Department on April 14, 2003.

The case was heard by *Lucille A. DiLeo,* J.

*Howard J. Potash* for the plaintiff.

*Michael J. McManus* for the defendant.

Gelinas, J. Sharon M. Sutton appeals from a judgment in the Probate and Family Court ruling that she has no interest in certain real estate owned as a tenant in common with Charles

Valois and requiring that she repay Valois funds she obtained from him during the parties' relationship. We affirm.

We recite the facts as found by the trial judge, undisputed in the record, or in conformity with the judge's findings, *Bruno* v. *Bruno*, 384 Mass. 31, 35 (1981), generally reserving detail for discussion of the issues. Sutton, a nurse earning approximately $32,000 a year, and Valois, an electrical engineer earning approximately $65,000 a year, met in October of 1999 and began dating. Valois moved in with Sutton and her roommate in April of 2000. While the parties lived there Valois paid one third of the rent.

In July, 2000, Valois purchased, in his name alone, a home at 16 Logan Path in Grafton for $143,500, financed entirely through withdrawals from his investment accounts. The parties lived together at the Logan Path home until the end of October, 2002.

During this period, Sutton asked Valois to loan her $20,000 so that she could pay off a car loan. Valois loaned her the money, and Sutton agreed to pay him back at the rate of approximately $500 per month. She made seven payments, amounting to $3,500. The parties then began to discuss the possibility of marriage. After that discussion of marriage, Valois indicated that Sutton need not repay the debt.

In their discussions about marriage, the parties talked of having children and buying a bigger house, which would include space for Sutton to operate a planned massage business. In May or June of 2001, the parties became engaged.

In October of 2002, based on the proposed marriage, the parties bought a house at 4 Hill Road in Grafton for $274,000. Both signed the purchase and sale agreement, the mortgage application, and the mortgage and promissory note. The deposit and the cash paid at closing, however, including the down payment, totaling in excess of $80,000, were, in effect, paid by Valois.[1] Although the money paid came from checks drawn on a joint checking account, all of the funds for the down payment were deposited in that joint account by Valois, who had emptied

---

[1] The probate judge made an express finding that Valois contributed the entire down payment.

his retirement account to do so. While Sutton had made some contributions to the joint account, her withdrawals for her personal and credit card expenses exceeded her contributions.

The property was deeded to Sutton and Valois; as the deed does not specify the manner in which the parties took title, they are presumed to have taken title as tenants in common. G. L. c. 184, § 7. See *Russo* v. *Russo*, 3 Mass. App. Ct. 364, 367 (1975).

The parties moved to their new home on November 1, 2002; Valois rented out the house at Logan Path. During the time they lived in the new home, Sutton collected four rent checks from the tenant who was now occupying the house at Logan Path. Valois maintained at trial that these checks, totaling $2,500, were to be deposited in the joint account; they were in fact retained by Sutton and deposited in her personal account. Sutton maintained that she did this with Valois's knowledge and approval and that Valois had told her to keep the checks. The probate judge made an explicit finding on this issue that Valois was credible and Sutton was not, and ruled that Sutton had been unjustly enriched in part by "the four rent checks [s]he obtained from Mr. Valois'[s] tenant." Sutton maintained that Valois had told her to keep the checks.

A month after moving into their new home, in December of 2002, the relationship soured. In February, 2003, approximately three years after they began living together, and eighteen months after becoming engaged, Sutton told Valois that she was never going to marry him or have children with him. She declined to go to counseling and began to contact other men on the Internet and to remain away from the house for extended periods. When she left for the weekend of March 7 and 8, Valois packed her personal belongings and put them in the garage. Sutton retrieved her belongings thereafter and withdrew $4,000 from the couple's joint account, and the relationship terminated.

In April of 2003, Sutton filed a complaint in equity in the Probate Court, seeking equitable division of personal property and a one-half interest in the house at 4 Hill Road. She also filed a petition for partition of the property.

Valois filed a cross complaint, which he later amended. In six counts, he sought reformation of the deed based on fraud, on

mutual mistake and intent, and on misrepresentation of material fact. He also claimed equitable distribution of personal property, unjust enrichment, and a resulting trust. As relief, Valois sought to be declared the sole owner of the house, repayment of the balance of Sutton's debt to him, payment of the rent checks retained by Sutton, and repayment of the $4,000 withdrawn from the joint account.

While the case was pending, and against a background of declining interest rates, the judge ordered Sutton to convey her interest in the property to Valois, so that he could refinance the home at a lower rate of interest. Without objection, Sutton conveyed her interest to Valois, the reduced interest mortgage was obtained, a court-ordered notice of lis pendens concerning the property was immediately placed on the record, and a motion to dismiss the petition for partition was filed.

Prior to trial, the parties resolved all differences with respect to the personal property. At trial the only issues before the judge were the ownership of the house and the money, if any, owed by Sutton to Valois.

The judge provided what she styled a "brief rationale" in support of her judgment, which declared Valois to be the sole owner of 4 Hill Road, and ordered Sutton to repay Valois the balance of the loan, the four rent checks, and the $4,000 withdrawn from their joint checking account, totaling $23,000.[2]

In her rationale, the judge first concluded that the value of the property as of March 1, 2003, was $270,000, some $4,000 less than had been paid. She based the value on a real estate appraisal performed for Valois by Thomas Walsh, whom she found credible. She found Sutton's appraiser, who valued the property at $307,000, not credible. The judge ruled that, since Valois had paid the entire down payment for the real estate and there was no equity increase in the property, it was "equitable to award him sole ownership." She also concluded that Sutton had been unjustly enriched in the amount of $23,000, "when she knew that the relationship was irretrievably broken down, yet continued to avail herself of funds of, or belonging to[,] Charles

---

[2]Upon an entry of judgment after trial, the judge dismissed Sutton's petition to partition.

Valois." The amount included $16,500 as the remaining balance of the $20,000 loan, the four rent checks totaling $2,500 obtained from the tenant, and $4,000 withdrawn from the joint checking account on March 10, 2003, after the relationship had ended.

1. *Remedies available to cohabitants.* "Cohabitation in Massachusetts does not create the relationship of husband and wife in the absence of a formal solemnization of marriage, . . . [and] the incidents of the marital relationship [do not] attach to an arrangement of cohabitation." *Collins* v. *Guggenheim,* 417 Mass. 615, 617 (1994). Common-law marriage is not recognized in Massachusetts. *Id.* at 618.

The Supreme Judicial Court has, however, held valid oral promises between unmarried cohabitants, so long as "illicit sexual relations were [not] an inherent aspect of the agreement or a 'serious and not merely an incidental part of the performance of the agreement.' " *Margolies* v. *Hopkins,* 401 Mass. 88, 92 (1987), quoting from *Green* v. *Richmond,* 369 Mass. 47, 51 (1975). More recently, in *Wilcox* v. *Trautz,* 427 Mass. 326 (1998), in adjudicating a claim with respect to the disposition of property between unmarried cohabitants, the court held that "unmarried cohabitants may lawfully contract concerning property, financial, and other matters relevant to their relationship." *Id.* at 332. In so doing, the court recognized that "[s]ocial mores regarding cohabitation between unmarried parties have changed dramatically in recent years and living arrangements that were once criticized are now relatively common and accepted." *Id.* at 330. "Such . . . contract[s are] subject to the rules of contract law, and [are] valid even if expressly made in contemplation of a common living arrangement, except to the extent that sexual services constitutes the only, or dominant, consideration for the agreement, or that enforcement should be denied on some other public policy ground." *Id.* at 332. Cases to the contrary in Massachusetts were expressly overruled. *Ibid.*[3] The court in *Wilcox, supra* at 335, also acknowledged that, in the circumstances, the Probate and Family Court had jurisdiction over the plaintiff's quantum meruit claim.

---

[3]Perhaps in recognition of these changing social mores, and as an indication of changing public policy, conduct consisting of lewd and lascivious cohabitation, once criminal by statute, is no longer a criminal offense. The Legislature

*Wilcox, supra* at 331 n.3, however, limits the grant of property rights to cases where there is an express contract and does not provide for an equitable distribution of property. See *Northrup* v. *Brigham*, 63 Mass. App. Ct. 362, 369-370 (2005). Equitable remedies are, however, available to cohabitants. See *Collins* v. *Guggenheim*, 417 Mass. at 617-618 (constructive trust); *Northrup* v. *Brigham, supra* at 366-367 (quantum meruit). See also *Wilcox v. Trautz, supra* at 335.

Other States permit equitable claims by, and grant equitable remedies to, unmarried cohabitants as they seek resolution of property issues, where the claims are not specifically predicated either on sexual relations or, in some cases, on the status of being an unmarried cohabitant; these courts generally conclude that equitable remedies will not contravene a public policy recognizing the importance of marriage. See, e.g., *Salzman* v. *Bachrach*, 996 P.2d 1263, 1267-1269 (Colo. 2000) (contributing cohabitant's unjust enrichment claim did not depend on sexual relations, and thus, public policy did not preclude that claim); *Spafford* v. *Coats*, 118 Ill. App. 3d 566, 572-573 (1983) (claims of plaintiff were "substantially independent of the nonmarital relationship of the parties and [were] not based on rights arising from their cohabitation"; thus, claim of unjust enrichment was permitted). Here we proceed to address the plaintiff's equitable claims.

*2. The Hill Road property.* Sutton first argues that the judge erred when she ruled that Valois should retain sole ownership of the 4 Hill Road property "by virtue of a resulting trust." As Valois observes, however, the judge did not state, either in the judgment or in her brief rationale, that the judgment with respect to the ownership of the property rested on a theory of resulting trust. She simply stated, "Mr. Valois contributed all the money for the acquisition . . . [and] there is no equity to be divided between the parties. Since Mr. Valois paid the entire down payment . . . the Court finds it equitable to award him sole ownership." While this language might seem to indicate a judgment based on the judge's personal notions of fairness and equity, see, e.g., *Raymond Leasing Corp.* v. *Callico Distribs., Inc.*, 62 Mass. App. Ct. 747, 749 n.3 (2005), when considered

repealed that part of the statute which made such conduct criminal. See St. 1987, c. 43 (repealing in part G. L. c. 272, § 16).

in the context of the judge's factual findings, it is clear that the judgment is founded in recognized equitable doctrine. Though not stating as much, the judgment in effect denied any claim, based on either legal or equitable grounds, that Sutton made for a share in the property.

From the judge's findings, it is clear that Sutton's claims are not predicated either solely or predominantly on sexual services. Sutton's original claim, and any later equitable claim arising after her transfer of title to Valois, was predicated on her holding legal title to the property together with Valois, along with her signing the note and mortgage. Sutton yielded any legal claim when, in compliance with court order, and without any written agreement or reservation with respect to her claim of title, she transferred her legal interest in the property to Valois, so that the property might be remortgaged.

Upon the voluntary transfer of her interest in the property, albeit at the order of the probate judge, Sutton moved to dismiss her separate petition for partition, and her claim became an equitable one, based on equitable theories of unjust enrichment, constructive trust, or resulting trust. See *Fortin* v. *Roman Catholic Bishop of Worcester*, 416 Mass. 781, 789-790, cert. denied, 511 U.S. 1142 (1994). Sutton's original pleadings suffice to permit consideration of her claims on the equitable theories of unjust enrichment, were Valois to retain sole ownership without payment to her, or that, after her conveyance of the property to him, Valois then held title in a constructive or resulting trust for Sutton's benefit.

We conclude, on the grounds apparent in the record,[4] as outlined below, that there was no error in the determination that Valois should have sole ownership of the property. We consider each of Sutton's equitable claims in turn.

In advancing her claim, Sutton first challenges the judge's finding that Valois contributed the entire down payment for the property, but as Valois argues, the judge's finding is supported by uncontroverted testimony that Valois was, by a mathematical

---

[4]See *Dorchester Mut. Fire Ins. Co.* v. *First Kostas Corp.*, 49 Mass. App. Ct. 651, 653 (2000), quoting from *Gabbidon* v. *King*, 414 Mass. 685, 686 (1993) ("[i]t is well established that, on appeal, we may consider any ground apparent on the record that supports the result reached in the lower court").

necessity, the financial source for the entire down payment. Sutton withdrew for her own use monies in excess of all deposits she made to the joint account, and Valois contributed not only monies sufficient for the down payment, but to make up for Sutton's excess withdrawals. Further, it is also uncontroverted, and the judge found, that (1) the parties were engaged to be married when they purchased the house in October, 2002; (2) a principal reason for purchasing the house was that it was big enough so that the parties could begin a family together; (3) in December, 2002, the couple began to have problems with their relationship; (4) in February, 2003, Sutton told Valois that she would never marry him or have children with him; and (5) she departed permanently from the residence in early March, 2003. These findings would support an ultimate finding that Valois advanced the monies for the purchase and that he agreed to the tenancy in common predicated on Sutton's promise to marry and to have a family with him.

A determination that a party would be unjustly enriched "require[s], generally, . . . that [the] party [would] hold property under such circumstances that in equity and good conscience he ought not retain it." *Stevens* v. *Nagel,* 64 Mass. App. Ct. 136, 141 (2005), quoting from *Simonds* v. *Simonds,* 45 N.Y.2d 233, 242 (1978). "The fundamental question in the present case[, therefore,] is whether [Valois] . . . received [a property interest that] in equity and good conscience belongs to [Sutton]." *National Shawmut Bank of Boston* v. *Fidelity Mut. Life Ins. Co.,* 318 Mass. 142, 150 (1945). A determination on the unjust enrichment here hinges on "the reasonable expectations of the parties." *Community Builders, Inc.* v. *Indian Motocycle Assocs.,* 44 Mass. App. Ct. 537, 560 (1998). We conclude that it would be unreasonable for Sutton to expect to gain an ownership interest in the property where its purchase was predicated on her promise to marry and have a family, a promise that she broke soon after the purchase.

While the promise to marry and have a family obviously connotes a promise with a sexual dimension, this vastly complex relationship and undertaking cannot be said to be solely, or even predominantly, sexual in a way offensive to public mores. If Sutton were to receive "one-half of the property's fair market

value less the original outstanding mortgage obligation" that she suggests should be hers, she would receive a windfall of half of Valois's approximately $80,000 deposit, having contributed no funds toward that deposit. It would contravene any notions of equity and good conscience to conclude that Valois must face the possible loss of some $40,000, given the fact that he expended the funds and agreed to accept the property in his and Sutton's name in anticipation of marriage and a family with Sutton, plans that began to fall apart less than two months after the purchase of the property. This is particularly so given the dearth of evidence as to any monetary contribution Sutton made to the relationship. In sum, Sutton would be unjustly enriched if she were found to possess an interest in the property such that she could recover any of Valois's deposit, and the probate judge crafted a proper equitable solution on this issue. See, in this regard, *De Cicco* v. *Barker*, 339 Mass. 457 (1959).

Nor could Sutton prevail on a theory that Valois held a share of the property for Sutton in constructive or resulting trust. A constructive or resulting trust may be imposed to prevent injustice, unjust enrichment, or fraud. See *State Street Bank & Trust Co.* v. *Beale*, 353 Mass. 103, 105 (1967); *Fortin* v. *Roman Catholic Bishop of Worcester*, 416 Mass. at 789-790. They are equitable remedies, applied where there is no stated intention to create a trust and where legal title to property is obtained by fraud, in violation of a fiduciary relationship, where confidential information was misused, or where there was "significant wrongdoing" by the party claiming title. See *Barry* v. *Covich*, 332 Mass. 338, 342 (1955); *Massachusetts Wholesalers of Malt Bevs., Inc.* v. *Attorney Gen.*, 409 Mass. 336, 342-343 (1991); *Demoulas* v. *Demoulas*, 428 Mass. 555, 572 (1998). Nothing in the record here suggests that Valois obtained legal title by fraudulent means or by "significant wrongdoing." He obtained his legal title by providing all of the cash consideration for the purchase and by his agreement to pay the note secured by the mortgage to the property. Full title to the property came to rest in Valois as the result of a court order made in the course of the present proceedings. All obligations that Sutton had to pay under the original note were extinguished by the new mortgage

and note on which Valois alone was obligated. Nothing in the record suggests that Sutton contributed to any of the initial mortgage payments. There is no suggestion in the record that Valois engaged in fraud, either on Sutton or on the court, with respect to obtaining full title to the property or by refinancing the existing mortgage at more favorable rates. Sutton conveyed her interest in the premises to Valois without contesting or appealing the court order and voluntarily dismissed her claim for partition.

As there was no fraud or other wrongdoing with respect to Valois's obtaining full title to the property, and no enforceable agreement, Sutton's claim for a constructive or resulting trust could only be based on unjust enrichment. Compare *Lewis* v. *Mills*, 32 Mass. App. Ct. 660 (1992). As set out *supra*, any such claim must fail. Recovery on a theory of Valois's being unjustly enriched would be appropriate "only if the circumstances of [his] retention are such that, as between [Sutton and Valois,] it is unjust for [Valois] to retain [it]." Restatement of Restitution § 1 comment c (1937). Valois's retaining the entire premises does not have the characteristics of a "windfall." *J.A. Sullian Corp.* v. *Commonwealth*, 397 Mass. 789, 794 (1986). Sutton's claim in this regard must fail.

3. *Propriety of order that Sutton repay Valois $23,000.* Sutton challenges the probate judge's determination that Sutton was required to repay the $16,500 balance on Valois's $20,000 loan to her, claiming "the evidence raised the inference" that Valois waived repayment. Sutton relies on testimony in which Valois acknowledged that he made the loan to Sutton because he loved her, but ignores Valois's direct denial — found in the same section of testimony cited by Sutton —that he ever told Sutton that he forgave the debt. It was for the probate judge to evaluate and weigh the witness on this point, including her determination of the credibility of the testimony, see *Adoption of Daniel*, 58 Mass. App. Ct. 195, 200 (2003). Nothing in the record directs us to a conclusion that the judge committed clear error in holding Sutton to the legal obligation created by the $20,000 loan. The evidence, rather, suggests that any waiver of the original loan payments was predicated on Sutton's promise to marry.

Regarding the $2,500 in rent money that Sutton was ordered to return, Sutton relies on her testimony — contradicted by Valois's testimony — that Valois knew that she was depositing the checks into a separate account. Here again, it was the probate judge's province to resolve conflicts in testimony and to evaluate the parties' credibility as witnesses. The testimony permitted the judge to conclude that the rent checks at issue were wrongfully diverted by Sutton and that, as Sutton lacked any reasonable expectation that she had permission to retain the funds for her own use, equity and good conscience required that the rent be remitted to Valois.

Finally, as regards the $4,000 that Sutton withdrew from the parties' joint checking account when the couple's relationship reached its end, Sutton argues that she justifiably emptied the account "in order to help pay the expenses of reestablishing herself as a single person living in an apartment." As Valois observes, however, at the time of the parties' parting, Sutton had taken out of the account for personal expenses more than she had contributed to it, leaving in the account only money contributed by Valois. The probate judge did not err in concluding that, if Sutton were permitted to take the $4,000 with her, she would receive a windfall that she could not have reasonably expected was hers to keep, and that, on principles of unjust enrichment set forth *supra*, Valois was entitled to the funds.

*Judgment affirmed.*