Tucker, Richard T., J.
This matter came on for trial before the court without jury on December 8, 9 and 10, 2008. Plaintiffs claim of quantum meruit as an unmarried cohabitant with the defendant, the late Nancy Costa, originally sought a sum of $500,000 based upon an oral agreement that she would bequeath that amount to Everett Mangsen in her will. Mangsen would commit a like amount to her by naming her as beneficiary on life insurance policies and his 40 IK account. On the start of the third day of trial, December 10, 2008, Plaintiffs Motion to Amend Complaint to Conform to the Evidence was presented and allowed by the court. This Amended Complaint provided that in the oral agreement with Mangsen, Costa had agreed that should she die first, Mangsen “would inherit a sum of money” and that the Estate of Nancy Costa would be liable to Mangsen “for the value of the services he provided to Nancy Costa during his lifetime in reliance on their mutual promises.”
To the original Complaint and the Amended Complaint, the defendant, as Administrator of the Estate of Nancy Costa, entered general denials and sought by counterclaim that the Estate be awarded an amount of approximately $106,000 in repayment of monies Costa had paid to or for Mangsen, and in the amount of $1,659.70 for an unauthorized withdrawal by Mangsen from an E-Trade account allegedly belonging to Timothy Costa. On the last day of trial, the counter claim for monies due on the E-Trade account was withdrawn.
FINDINGS OF FACT
Upon the testimony presented and the review of the numerous exhibits, some containing hundreds of pages, I recite the facts as found, generally reserving detail for discussion of the issues hereafter.
The plaintiff, Everett Mangsen, Jr. (Mangsen) met the deceased, Nancy Costa (Costa) while both were employees at Digital Equipment Corp. during the late 1980s. Mangsen worked for Digital from 1986 to 1996 at which time he was released during a reduction in force. He was rehired in 1998 and stayed with Digital into 2001. He served as a Senior Assistant Analyst, an IT Technical Manager and Consulting Program Manager for Digital. After Digital was acquired by Compact Corporation in 2001, Mangsen remained employed by Compact for a period of time and thereafter with Hewlett-Packard Company, which purchased Compact in 2002.
Costa in the late 1980s was married with two children, Michael, date of birth 1984, and Timothy, date of birth 1982. At Digital she served as a Manager in the Business Management Group.
Mangsen had previously been married and divorced and had three children: Kim Mangsen, born during his first marriage, Cassandra, date of birth September 10, 1981 and Dana, date of birth January 25, 1983 bom during his second marriage. Thus, when Mangsen and Costa met on or about 1986, both were married with children.
By 1987 both Mangsen and Costa were separated from their spouses. Mangsen divorced his second wife on May 16, 1990. Costa, who was seeking or had received a divorce in 1990, provided Mangsen with $16,000 in August of 1990, an amount Mangsen was required to pay to his former spouse as set forth in the divorce decree. Costa also provided Mangsen with $16,263.24 to halt a bank foreclosure on property at 1020 West Boylston Street, Worcester that Mangsen received in the distribution of assets in the divorce. Mangsen did not, nor was he expected to, pay these amounts back.
By 1990, both Mangsen and Costa desired to live together and merge their families. To this end, Costa purchased a residence at 34 West River Street, Upton, Massachusetts on August 4, 1990. She paid for most of the purchase price of $235,000 from her own funds and obtained a $95,000 mortgage in her name for the balance. After the purchase, Mangsen moved into 34 West River Street.
At the time of the purchase, 34 West River Street was not fully finished in its interior. It was large, however, and presented opportunities for expansion. It was situated on a large two-acre lot. Mangsen, being in poor financial condition following his divorce, was a skilled builder with a large collection of tools even though this was not his chosen profession. It was agreed between Mangsen and Costa that she would *383 purchase the house and that they both would attempt to complete the interior and expand the property as necessary to provide for their merged families.
Mangsen, indeed, was a man of building skill and energy. During his off-hours and weekends, over the years, he performed renovations and/or finish work upon the bathrooms, laying of the kitchen floor, installing a marble floor in the front foyer, installing hardwood floors in the hallways and landing areas and in some of the rooms of the house, preparing and leveling the land for the installation of an in-ground swimming pool, removal of trees throughout the property, the conversion of the garage and the construction of a barn resulting in a mud room and work room as well as constructing new garages, a circular driveway, stonewalls, a farmer’s porch, hot tub and other improvements. Costa also worked on these projects, providing planning and reviewing of plans with Mangsen and painting of walls and other finish work. During much of this period of work and renovation, both Mangsen and Costa were employed. Mangsen performed the larger share of the renovation work, but Costa in addition to her planning and “lighter” construction services, performed the customary house work, cooking and grocery shopping and maintained the pool once it was completed. Additionally, Costa funded most of this work through money she had received in her divorce and money she had inherited in 1991 and in 1994. She also borrowed heavily by mortgage loans and lines of credit in the amount of $42,000 (line of credit) October 1, 1992, $129,700 (real estate mortgage) May 7,1998, and $250,000 (real estate-mortgage on September 19, 2003). In some instances, they both contributed equally to the purchase of equipment (e.g. backhoe) for these projects.
As Costa had taken on large financial obligations, it was agreed that Mangsen would provide some assistance financially for the ongoing bills and loan repayments. At times, these payments by Mangsen, which the court finds was an agreed amount of $150 per week, were categorized as “rent” and sometimes as “sharing of expenses.” In any event, it is clear that there was some expectation that Mangsen would contribute funds regularly. It is also clear that his payments in this regard were not consistent and during the period of time were not fully made.
In 1995, Costa purchased a newly built waterfront vacation home in New Hampshire at Deer Haven Road, Moultonboro, New Hampshire. The parties planned to rent it during the summer months to pay for its purchase and, as with the Upton property, it was agreed that they would both work towards making it livable and rentable. This they accomplished and rentals started in the summer of 1995.
The testimony established that the parties enjoyed many recreational pursuits which they provided for themselves and their children. Much testimony was given regarding the various boats, “Sea Doos," go-carts, all terrain vehicles, dirt bikes, canoes and other recreational equipment that was purchased. An admission was made by Timothy Costa at trial that all the children were “sort of spoiled” in this regard. The two families also vacationed with regularity. The funding for this equipment and recreational pursuits came mostly from Costa although Mangsen provided some of the funds. On one occasion, Costa borrowed $40,000 to pay for a cruise and trip to Disney World for their families and their extended families.
By the late 1900s the house in Upton had been renovated so that it provided a very pleasant home for Mangsen, Costa and their four children. It was spacious, appears to have been renovated with skill and taste, and provided amenities such as an in-ground swimming pool, hot tub, recreation room and individual bedrooms for the four children. [1]
Mangsen and Costa, however, had been, as of the late 90s, using and abusing alcohol. They experienced problems in their relationship. In July of 1998 they had a serious argument which resulted in Costa applying for and obtaining an abuse protection restraining order under G.L.c. 209A from the Milford District Court. Mangsen never appeared in court to defend or to object to said order. After a short relocation from the premises by Mangsen, the couple were reunited and living together in August or September of 1998. After his return, Mangsen continued working on various projects such as the pool cabana, deck and hot tub.
In May 2000 Costa provided for a $100,000 bequest to Mangsen in a draft of her will prepared by her attorney. This will was never executed by Costa. No further evidence was presented related to the drafting or non-execution of the will.
The day following Thanksgiving 2002 the parties had another furious argument and Costa presented herself with signs of physical injury to the police department.[2] As a result, Mangsen was again ordered to leave the premises by court order. Mangsen never returned to live again at the properly although there was evidence that both he and Costa kept in touch by e-mails and other means.
In early February 2004 Costa’s son Michael died in a motor vehicle accident. Two weeks later, Costa herself passed away. She died intestate. Mangsen did not attend the wake or funeral.
Mangsen had testified in deposition prior to trial, and it was so pleaded in the original complaint, that Costa had specifically promised to leave him $500,000 as her part to an agreement between the parties. According to said agreement Mangsen was to name Costa as his beneficiary on his life insurance policies and a 40 IK policy. There was evidence that Costa was so named as the beneficiary on a New York Life Insurance Policy, having a $150,000 life benefit. However, said policy was mandated in the divorce decree to be *384 kept in place with his former wife as beneficiary to secure Mangsen’s child support obligation. Thus it is questionable whether, had Mangsen died before her, Costa would have received any of that life benefit. In any event, after Mangsen testified at trial, the claim that they had agreed upon a specific amount to be left to each other by will or by beneficiary clauses was amended so that Mangsen claimed by the end of the trial that Costa had agreed to leave him a sum of money to compensate him for all the work he had provided to her properties. To this end, Mangsen spent much time and much testimony setting forth the projects and work that he performed on the properties. He also testified as to his opinion as to reasonable costs for his labor in this regard. The sum total of the value of services provided, as Mangsen broke it down in his testimony per renovation project that he performed, was $106,995.[3]
RULINGS OF LAW
(1) An oral contract involving a promise to make a will is not binding in accordance with the Statute of Frauds, G.L.c. 259, §5.
(2) An oral contract, however, determined not to be contrary to public policy may provide the basis for recovery in quantum meruit by a party for the fair value of the services provided. Green v. Richmond, 369 Mass. 47, 49 (1975).
(3) Although in a close relationship many services are performed without expectation of payment, Massachusetts law does not presume that all services arising out of a romantic relationship are gratuitous. Northrop v. Brigham, 63 Mass.App.Ct. 362, 368 (2005).
(4) “Unmarried cohabitants may lawfully contract concerning property, financial, and other matters relevant to their relationship. Such a contract is subject to the rules of contract law and is valid even if expressly made in contemplation of a common living arrangement except to the extent that sexual services constitute the only, or dominant consideration for the agreement, or that enforcement should be denied on some other public policy ground." Wilcox v. Trautz, 427 Mass. 326, 332 (1998).
(5) In determining whether a parly to a romantic relationship is entitled to payment for services provided pursuant to an alleged oral contract, “the trier [of fact] must consider all relevant circumstances including the situation and relationship of the parties as well as the nature and extent of the services rendered.” Hastoupis v. Gargas, 9 Mass.App.Ct. 27, 36-37 (1980).
(6) “Actions arising from a loving relationship and financial considerations are not mutually exclusive. That actions may arise in a loving relationship and be protected under contract is well-established.” Northbridge v. Brigham, 63 Mass.App.Ct. 362, 367 (2005), citing Wilcox, 427 Mass. at 330-33; Green, 369 Mass. at 52-54.
DISCUSSION
Mangsen’s Claim
As stated, Mangsen’s original complaint sought recovery based upon mutual promises that Costa and he made stating that they would each provide $500,000 to the other upon death. Costa allegedly was to do so through a bequest in her will and Mangsen was going to provide said funds by naming Costa as his beneficiary on life insurance policies and his 40IK plan.
After testifying during cross examination that the parties had not discussed a specific amount, Mangsen amended his complaint so as to seek recovery based upon promises that each would be the beneficiary of the other’s estate and that Costa specifically promised Mangsen that he would inherit “a sum of money should she pass away.” As Costa did not leave a will, Mangsen sought recovery from the Estate of Nancy Costa “for the value of the services he provided to Nancy Costa during her lifetime in reliance upon their mutual promises.”
The law of Massachusetts in regard to the rights of unmarried cohabitants has undergone revision in recent years, in part in recognition that “(s]ocial mores regarding cohabitation between unmarried parties have changed dramatically in recent years and living arrangements that were once criticized are now relatively common and accepted.” Wilcox, 427 Mass. at 330. As a result, “unmarried cohabitants may lawfully contract concerning property, financial, and other matters relevant to their relationship.” Id. at 332. Moreover oral promises to leave a bequest to a cohabitant, although not binding under the Statute of Frauds, G.L.c. 259, §5, have been the basis for recovery in quantum meruit for the fair value of services rendered. Green, 369 Mass. at 49; Northrop v. Brigham, 63 Mass.App.Ct. 362, 369 (2005); see Hastoupis, 9 Mass.App. at 34-35. Thus, while Mangsen may not prevail on an oral promise to make a will under the Statute of Frauds and cannot establish a written contract as was approved in Wilcox, 427 Mass. at 330, Mangsen’s claim in quantum meruit for recovery for the services provided has a recognized basis in law.
The decisions that have upheld the rights of a cohabitant to quantum meruit recovery have relied in large part upon some common factors. In Hastoupis, 9 Mass.App.Ct. at 30, restitutionary damages were upheld upon a finding of well-corroborated statements of the decedent that if the plaintiff and his wife would stay with him and forgo their plans to staff their own bakery business, and if they would continue to serve the decedent and nurse him when he was ill, then “half of it [his estate], it will be bequeathed to you and your family.” Upon such statements, which “other witnesses directly corroborated,” the Appeals Court upheld the jury verdict for the plaintiff upon the basis of quantum meruit for services rendered. Id.
*385 Quantum meruit recovery had also been upheld in Green, 369 Mass. at 49, by the Supreme Judicial Court upon a finding that the plaintiff had been promised that if she would “stay” with him, the decedent would bequeath his estate to her at death. The Court also specifically found that “there was other evidence directly corroborating the agreement.” Id. The Supreme Judicial Court reviewed its prior decisions in which quantum meruit recovery by an unmarried plaintiff was allowed[4] and stated that in these prior cases, as in Green, “weight is to be given to the fact that. . . the decedent continued knowingly to accept the services of the plaintiff up to the time of the decedent’s death. Indeed, there was evidence that the decedent [in Green] reaffirmed his promise just three months before his death.” Id. at 58.
More recently in Northrop, 63 Mass.App.Ct. at 367, quantum meruit recovery was upheld, and thus summary judgment for the defendant was reversed. In Northrop, the plaintiff moved into Robert J. Lurtsema’s[5] household, at his request and for no compensation, and dedicated the next ten years of her life to their relationship and “to his career, his health, his success, his financial well being.” Id. at 365. Plaintiff provided substantial services out of her love for Lurtsema but also upon the repeated assurances he would leave her the bulk of his estate. Id. at 367. Despite the fact that plaintiff testified that they never discussed specific compensation for the services she was rendering, or that she provided said services at least in part as a result of her love for him, the court held that she had made out a sufficient case to survive defendant’s motion for summary judgment. In so ruling the court stated that it does not “consider actions and statements as strands in isolation, but as threads which, when viewed together, form the tapestry, often multi-textured of interpersonal dynamics.” Id. As such the record before the trial court sufficiently supported a claim to withstand summary judgment. Id. The court was clear to distinguish this case, however, from actions based upon claims “for services ordinarily rendered by a wife in maintaining a home and in performing the usual household duties.” Id. at 368. Plaintiff had supplied not only these customary services but cilso “extensive efforts that enabled Lurtsema to continue to work, travel and perform, and for financial planning and investment services that she provided for him and helped him to secure.” Id. at 368-69.
More recently the Appeals Court in Sutton v. Valois, 66 Mass.App.Ct. 258 (2006), dealt with a claim of an unmarried cohabitant who sought a share in the real estate purchased by her fiancé with whom she had lived for three years prior to the dissolution of their relationship. The Probate Judge who heard the case ruled that plaintiff was entitled to no portion of the value of the home, finding that the defendant had paid the entire down payment for the house and, although title to the property was taken in joint names and both signed the promissory note and mortgage, the fiancé had made the monthly payments of the mortgage. In ruling that the fiancé had not been unjustly enriched the court stated that a determination for unjust enrichment hinges on “the reasonable expectations of the parties.” Id. at 265, citing Community Builders, Inc. v. Indian Motorcycle Assocs., 44 Mass.App.Ct. 537, 560 (1998). Upon all the evidence, “it would be unreasonable for [plaintiff) to expect to gain an ownership interest in the property where its purchase was predicated on her promise to marry and have a family, a promise that she broke soon after the purchase.” Sutton v. Valois, 66 Mass.App.Ct. at 265. The defendant’s “retaining of the entire premises [did] not have the characteristics of a ‘windfall,’ ” the court found. Id. at 267, citing J.A. Sullivan Corp. v. Commonwealth, 391 Mass. 789, 794 (1986).
In the case at bar, Mangsen’s claim of an agreement to be left money in Costa’s will is uncorroborated. Mangsen was the only witness to testify to the same and Timothy Costa, the son of the deceased and the Administrator of her Estate, specifically disputed that any agreement existed. Timothy Costa testified that prior to his mother’s death he had conversations with her about her will. She related no agreement to leave Mangsen anything in her will and, though she was aware that Mangsen had made her a “domestic partner” beneficiary under an insurance policy offered by Mangsen’s employer Hewlett Packard, she specifically told Timothy that she did not want Mangsen to inherit as a “domestic partner.”
In judging Mangsen’s uncorroborated testimony that was rebutted by Timothy Costa, the court must evaluate Mangsen’s credibility. At trial, the estate submitted evidence of inaccurate or false statements made by Mangsen in papers filed during his divorce and interrogatory answers under oath. On these forms, Mangsen categorized his payments to Costa as “rent” but at times referred to such payments as a “sharing of expenses.” He converted his Worcester property to become a rental property without benefit of a variance that he testified he knew was required. Mangsen apparently listed Costa as a beneficiary of a life insurance policy when he was under a Probate Court decree to list his former wife as the beneficiary to secure his child support obligation. The $16,000 and $16,263.24 that Costa provided Mangsen in 1990 were listed as obligations in Mangsen’s divorce filings though he testified at trial that this was “untrue.”[6] Moreover, this court is aware that through the prosecution of this claim and discovery procedure Mangsen maintained an oral agreement of Costa to pay him $500,000 for his services upon her death existed, only to testify on the stand that there was no specific amount ever discussed.
The court doubts the accuracy and veracity of Mangsen’s testimony as to agreements made with *386 Costa for his reimbursement. His testimony in this regard was uncorroborated by other witnesses or by any other documents. The fact that Costa drafted a will containing a bequest to Mangsen for $100,000 cuts both ways. Mangsen may argue that this draft shows an intent on Costa’s part to recognize an agreement she made with Mangsen; her non-execution of the draft and subsequent events support a finding that Costa never felt bound to leave Mangsen any sum. Moreover, the unrebutted instances of physical abuse by Mangsen requiring Costa to receive court intervention and Mangsen’s temporary and then permanent vacation from the premises, clearly could reasonably have impacted Costa’s testamentary decisions.
Although Mangsen’s claim is based in quantum meruit and not in express contract, it is required that there be an underlying contract or agreement between the parties. As was stated in J.A. Sullivan Corp., 397 Mass. at 793-92,
Quantum meruit is a theory of recovery, not a cause of action.
It is a claim independent of an assertion for damages under the contract, although both claims have as a common basis the contract itself. Recovery under this theory is derived from the principles of equity and fairness and is allowed where there is substantial performance but not full completion of the contract. See generally 5 S. Williston, Contracts §805 (3d ed. 1961). In a case involving an unenforceable contract, we allowed quantum meruit recovery, basing our reasoning on the theory of unjust enrichment. Salamon v. Terra, 394 Mass. 857, 859 (1985). “A person who has been unjustly enriched at the expense of another is required to make restitution to the other.” Id., quoting Restatement of Restitution §1 (1937). As in Salamon, supra, we have considered the principles of equity and morality in reaching our decision today.
Thus the decisions that have allowed quantum meruit recovery based upon an unenforceable oral agreement have generally found the existence of the agreement with the aid of some corroborating evidence, a subject of the agreement whereby the plaintiff has provided services to or for the benefit of the deceased, and a failure of payment or recompense for said services which in equity and good conscience should be made. See, Sutton, 66 Mass.App.Ct. at 267 (finding that recipient of property had not received a “windfall”).
In this case, however, Mangsen benefitted equally from his labors as did Costa at all times while he was living with Costa. He and his children lived at the premises that he was working to improve. Despite the fact that he had agreed to pay rent or help with the expenses he was much in arrears in this regard. The financing for the improvements to the property came from Costa. This is not to say that Mangsen did not provide considerable work and effort in improving the premises which improved the living conditions for Costa and her children and to which Costa received the permanent benefit as owner. But it cannot be found by this court that Mangsen performed these services for Costa, or that they were performed for her benefit. The testimony of Mangsen that Costa, in addition to financing the improvements, also lent a hand in the manual labor, cannot be overlooked. The court finds that although Mangsen’s services were substantial and valuable, that they were not made upon an agreement for recompense and were not made primarily for Costa’s benefit. Moreover, had there been an oral agreement between the parties, this court finds that the record of two domestic assaults committed by Mangsen and Mangsen’s being ordered to leave the premises some 15 months prior to Costa’s death is sufficient to find a substantial breach of the agreement by Mangsen.
Costa’s Counterclaim
The Estate of Nancy Costa brought a counterclaim to Mangsen’s complaint which sought damages alleging that “at various and diverse times the deceased [Costa] paid bills of Mangsen, paid other obligations of Mangsen and loaned sums of money to Mangsen, always with the agreement that Mangsen would fully pay her back if she made these payments and loans.” It is further alleged that after applying credits for some payments received, the outstanding amounts due the Estate total $106,000.
In support of these claims of the Estate, the Administrator, Timothy Costa, submitted handwritten and typed lists of costs, expenses and payments attributed to the deceased Nancy Costa and which, it was stated in testimony, set forth amounts paid by the deceased on behalf of Mangsen. No loan documents, promissory notes or other evidence of debt were submitted. These lists do not set forth that any of the listed expenditures were obligations of Mangsen nor state his name, with the exception of one notation that states “carpet M. Mangsen (11-23-90) $587.16.” All of the five pages of listings refer to no specific obligor. Timothy Costa testified he never discussed these lists with his mother, but identified her handwriting and her personal files as the source of these writings.
The counterclaim of the Estate suffers from the same deficiencies of proof as Mangsen in his claim, that being a lack of evidence that an agreement existed between the parties for repayment. The findings made by this court on Mangsen’s claim that the parties did not specifically agree upon repayment, applies equally to the counterclaim. From the threads of the tapestry of their relationship entered into evidence, this court finds that both Costa and Mangsen contributed to their relationship by the means available to each. The court finds the evidence to be insufficient to support an agreement for repayment to Mangsen for his services rendered and similarly insufficient to support an *387 agreement for repayment of expenditures made by Costa.
ORDER
For the above stated reasons the court finds for the defendant, the Estate of Nancy Costa on the claim of Everett Mangsen. The court finds for the plaintiff, Everett Mangsen, on the counterclaim of Timothy Costa, Administrator of the Estate of Nancy Costa. Judgment shall enter for each party in accordance with these findings.

Kim Mangsen, Mangsen’s daughter from his first marriage, never lived at the premises. Cassandra Mangsen did not live full-time at the premises, but had a room of her own.

Scratched glasses, “black” eye, facial scratches.

No expert testimony or other corroboration for these opinions was produced at trial.

Turner v. White, 329 Mass. 549 (1952); Downey v. Union Trust Co., 312 Mass. 405 (1942).

Robert J. Lurtsema was a composer, writer, and a host of a public radio program. Northrop, 63 Mass.App.Ct. at 362.

Mangsen testified that he was not truthful in his probate court filings in an effort to keep his child support obligation reasonable.