LINDA CANEPARI *VS.* RICHARD W. PASCALE.

No. 08-P-1885.

Franklin. February 2, 2010. - March 1, 2011.

Present: LENK, DUFFLY, & McHUGH, JJ.[1]

*Real Property,* Partition. *Probate Court,* Partition proceedings. *Evidence,* Value.

This court concluded that, in the circumstances of a Probate and Family Court proceeding on a petition to partition real property, in which the joint tenants stipulated that physical division of the land was not possible, remand for further proceedings was required to determine the amount of money to be paid to the other party by the remaining tenant, where the judge considered only the increase in value of the property, as reflected in the assessment records, between the time the other party became a joint tenant until the time she stopped living at the property. [843-846]

In the circumstances of a Probate and Family Court proceeding on a petition to partition real property, the judge's reliance on tax assessment values in determining the amount of money to be paid to the other party by the remaining tenant was not inappropriate. [846-847]

In the circumstances of a Probate and Family Court proceeding on a petition to partition real property, the judge did not abuse his discretion in excluding proposed testimony by one of the parties as to the property's value, where the judge reasonably concluded that the party was not sufficiently qualified to offer an opinion of value and that her proposed testimony was based on hearsay. [847]

PETITION filed in the Franklin Division of the Probate and Family Court Department on April 6, 2006.

The case was heard by *Geoffrey A. Wilson,* J.

*Ann Wagner* for the plaintiff.

*Michael J. Serduck* for the defendant.

McHUGH, J. Linda Canepari, the plaintiff, and Richard W. Pascale, the defendant, owned as joint tenants approximately

---

[1] Justice Duffly participated in the deliberation of this case while an Associate Justice of this court, prior to her appointment as an Associate Justice of the Supreme Judicial Court.

twenty-two acres of real estate at 168 Ed Clark Road in Colrain (the property), where they lived together. After their relationship soured, Canepari commenced a partition action in the Probate and Family Court. Following a two-day trial, a judge of that court issued findings of fact and rulings of law awarding Canepari $10,000 for her share of the property. Claiming that the award was unfair and inequitable and that the judge erred both by excluding evidence of value she wished to offer and by refusing to allow an appraisal she wished to conduct, Canepari appeals. For the reasons that follow, we vacate the judgment and remand for further proceedings consistent with this opinion.

*Background.* The basic facts found by the judge are not seriously disputed. On or about January 31, 1985, Pascale purchased the property for $35,000. He took title in his own name and used his own funds for the purchase. At the time, Pascale was living with Canepari and her young son, Kyle. All three moved to the property shortly thereafter.

In August, 1988, Pascale transferred the property to himself and Canepari as joint tenants. No exchange of money accompanied the transfer for, as the judge found, "the transfer . . . was prompted by [Canepari's] desire for [Pascale] to make a more significant commitment to the parties' relationship, and she viewed this transfer as a very important element to that commitment."

For the next twelve years, Canepari and Pascale lived on the property and farmed it together. Pascale operated an organic farm and Canepari grew and sold flowers. During that period, they shared all expenses including taxes and maintenance. In August, 1993, their son, Dante, was born.

Unfortunately, what proved to be irreconcilable domestic difficulties surfaced and eventually led to Canepari's departure in September, 2000. Dante, then seven, went with her, Kyle apparently having departed earlier. Canepari continued to harvest her flowers throughout the fall of that year, did some work on the farm on a limited basis in 2001, but did not use the land thereafter.

After Canepari departed, she and Pascale discussed transfer of her interest in the property back to Pascale. They were unable to reach a final agreement on the subject but, as the result of an interim agreement, Pascale gave her $9,000 as a partial

payment for her interest. In the end, though, their inability to reach a final agreement led to Canepari's commencement of this action.

Although Canepari's complaint sought partition of the property pursuant to G. L. c. 241, § 1, she and Pascale stipulated as the trial began that the premises could not be physically divided. As a consequence, the judge "decided [the] case utilizing the general equity authority conferred upon [the court] by G. L. c. 215, § 6. While the [judge] relied on the authority established in G. L. c. 241 to determine a fair and equitable division of the real estate in the form of a monetary award to the petitioner, [he found that] use of a commissioner, the procedures inherent with such an appointment, and the resulting cost to both parties, [were] unnecessary."[2]

In determining the appropriate monetary award for Canepari's interest, the judge essentially made an economic analysis of three consecutive periods of time. The first was from 1985 to 1988, during which Pascale and Canepari lived on the property but title stood in Pascale's name alone. The second was from 1988 to September, 2000, when Pascale and Canepari held the joint tenancy, lived together on the property, and worked on it collaboratively. The third and final period ran from September, 2000, when Canepari left, until she commenced this action.

As to the first period, the judge found that the property's assessed value when Pascale bought it was $30,000, $5,000 less than Pascale paid. From 1985 to 1987, Pascale alone paid the real estate taxes, which totaled $1,472.10. From 1985 to 1988, Pascale and Canepari made improvements to the property consisting of remodeling and adding to the existing house and erecting a sugar house and greenhouse. The out-of-pocket cost of the addition was $2,000, which the two shared equally. They likewise shared equally the labor involved in the addition and the remodeling effort. The out-of-pocket costs for the sugar house and greenhouse amounted to $2,200, which Pascale paid from his own funds, and he supplied most of the labor necessary for their construction.

When Pascale created the joint tenancy by conveying the

---

[2]For the duties of commissioners and the extensive role they ordinarily play in partition proceedings, see G. L. c. 241, §§ 12-14, 16, 19, 22, 31-34, 36.

property to himself and Canepari in 1988, the town valued the land and improvements at $38,200. For the next twelve years, Pascale and Canepari jointly paid real estate taxes totaling $13,089.76. They also added a second pond, a second addition to the house, and partially built a cabin or shed at a total cost of $4,500. Of that sum, Pascale contributed $2,250 and Canepari provided the balance. A contractor provided labor for the pond but Pascale supplied the labor for the other improvements. Pascale and Canepari jointly farmed the property during this period, sharing equally in farm operations, income, and expense.

When Canepari left the property in September, 2000, the assessed value had risen to $71,200 and, by 2006, it had risen still further to $133,300. After September, 2000, and up to the time of trial, Pascale alone paid the real estate taxes totaling $13,334.49. He also made modest improvements, the cost of which approximated $600. He alone farmed the property, paid the expenses, and received the revenues.

After considering all of the evidence, the judge awarded Canepari $19,000, which he found was "slightly more than one-half of the increase in the assessed value of the property from 1988 to 2000 [and took] into account her previous financial contributions." After crediting Pascale with the $9,000 partial payment he made before the litigation began, the judge ordered entry of judgment in Canepari's favor in the amount of $10,000.

On this appeal, neither party argues that the judge erred by failing to follow the formalities of a partition proceeding.[3] As noted earlier, however, Canepari does argue that the amount awarded to her was inadequate and that evidence of value she wished to offer was improperly excluded. We consider her arguments in that order.

*Discussion.* It is apparent from the judge's comprehensive findings that, in deciding to value Canepari's share of the property at $19,000, he considered only the increase in value, as reflected

---

[3]Nor does either party claim that the judge should have used some other analytical framework, such as the framework provided by G. L. c. 208, § 34, to determine the value of Canepari's interest. We take the issues as the parties have framed them and, as a consequence, have no occasion to consider whether a different approach to determining the appropriate value would have been appropriate.

in assessment records, that occurred from the time Canepari became a joint tenant in 1988 until the time she left the property in September, 2000. Several problems attend that approach.

First, although "the purpose of partition proceedings is to balance the rights and equities of the parties concerning the property at issue," *Gonzalez* v. *Pierce-Williams*, 68 Mass. App. Ct. 785, 787 (2007), and the over-all object of partition proceedings is a "just and equitable" division, *Sanborn* v. *Johns*, 19 Mass. App. Ct. 721, 724 (1985), quoting from *Batchelder* v. *Munroe*, 335 Mass. 216, 218 (1957), there is a rebuttable presumption that partitioned property should be equally divided. See *Moat* v. *Ducharme*, 28 Mass. App. Ct. 749, 751 (1990). "Confronted with a petition for partition, a coowner may attempt to show that his beneficial interest is 'different from that indicated by the record title.' " *Gonzalez* v. *Prince-Williams*, 68 Mass. App. Ct. at 787, quoting from *Asker* v. *Asker*, 8 Mass. App. Ct. 634, 638 (1979). But the burden of showing that a departure from equal division is appropriate rests with the party who seeks the departure. See *Asker* v. *Asker*, 8 Mass. App. Ct. at 638. And, though the judge necessarily is given considerable leeway in making an equitable division, see *Sanborn* v. *Johns*, 19 Mass. App. Ct. at 724, that leeway is not boundless.

Here, there is no suggestion in the record or in the judge's findings that Pascale's transfer of the property to himself and Canepari as joint tenants was designed to do anything other than convey an equal share of the property as it then existed. Indeed, the judge's approach to valuation of Canepari's share implies a finding that Pascale conveyed to her an interest in the property that had absolutely no value. But a transfer with zero value appears wholly inconsistent with the transfer's animating force and with the time and effort Canepari invested both in the property and in her relationship with Pascale before the transfer occurred.

As to Canepari's share of the property's increase in value after she left, the judge found as follows:

> "Ms. Canepari technically had an interest in the property as a joint tenant from the time she left the property in 2000 to present. However, she was inactive and silent dur-

ing this period with respect to that interest. Mr. Pascale provided all of the on-going contributions to the expenses and maintenance of the property, as well as to the improvements thereon, while also enjoying the benefits of sole and exclusive use of the property. As a result, no credit is due to Ms. Canepari for the increase in the assessed value of the property during this time period. Likewise no credit is due to Mr. Pascale for this period for the maintenance, taxes, and other expenses associated with the property."

But the record, and the judge's earlier findings, demonstrate that Canepari was not silent. Indeed, she and Pascale held discussions about the value of her interest and those discussions led to Pascale's $9,000 partial payment.[4] And the judge's exclusive focus on Pascale's payment of expenses after Canepari departed fails to consider either the effect of her predeparture efforts on the postdeparture increase or the extent to which the property would have increased in value even without any postdeparture effort by Pascale.

In the last analysis, the judge's approach to valuing Canepari's interest in the property after her departure is tantamount to a finding that she conveyed her interest back to Pascale as she walked out the door. But nothing in the record would support such a finding. This is not a case where, for example, the parties took joint title to property in anticipation of marriage and then ended their relationship a few months later. See *Sutton v. Valois*, 66 Mass. App. Ct. 258, 260 (2006). Nor is it a case where a cohabitant, without the benefit of record title, is seeking equitable relief on the grounds of unjust enrichment for her

---

[4]After Pascale and Canepari unsuccessfully attempted on their own to reach agreement on a value for Canepari's interest, Pascale hired an attorney in the spring of 2003, to prepare a settlement agreement. Both Canepari and Pascale met with the attorney in the fall of 2003 to review the agreement. That meeting led to an amended agreement prepared in December, 2003, that reflected Pascale's advance of $9,000 toward the purchase of Canepari's interest. At some point, Pascale and Canepari became involved in a child custody action, and in October 2005, Canepari filed the present action. The custody action apparently proceeded to trial before this one. This case, therefore, is a far cry from cases like *Sanborn v. Johns*, 19 Mass. App. Ct. 725 (1985), where a wife, one of two cotenants, was entirely silent for twelve years before filing a partition claim and then based the claim on the apparently inadvertent omission from a final divorce decree of an agreement she had made to convey her interest in the marital property to her former husband.

contributions to the property. See *id.* at 262-263. Moreover, there is no suggestion in the record that Canepari delayed unreasonably in pursuing a partition action or that she dragged the proceedings out after they began. Indeed, Pascale knew that his payment to Canepari was but partial compensation for her interest and, had he been concerned about delay in bringing matters to a final resolution, it was open to him to commence his own partition action.

None of this is to suggest that Pascale's initial contribution to the property or the investment of money and labor he made after Canepari's departure were irrelevant to determining the value of Canepari's interest. As we said in *Stylianopoulos* v. *Stylianopoulos*, 17 Mass. App. Ct. 64, 69-70 (1983), "[n]o provision in [G. L.] c. 241 deals explicitly with how taxes, mortgage debt service, and insurance shall be accounted for. Such costs, however, are incurred to preserve the common estate and it would be a windfall to the noncontributing tenant if, upon partition, the paying tenant and the noncontributing tenant were not obliged to account so that each tenant in common bears his proportional share of the costs." See *Batchelder* v. *Munroe*, 335 Mass. at 219. It is to say, however, that Canepari's interest in the property was not circumscribed in the fashion the judge circumscribed it and, although he was entitled to weigh their respective contributions in determining whether Pascale had overcome the presumption of equal division, the record does not support the bright lines he drew or the manner in which he appears to have drawn them. On remand, we think that the judge should begin with the presumption of equal division and then make adjustments to that presumption for particular contributions to the property, and the effect of those contributions on the property's increase in value, to the extent that the party seeking the adjustment carries his or her burden of proving that the adjustment is warranted.

The other issues Canepari raises can be dispatched more briefly. Insofar as an appraisal was concerned, the judge explained why he did not follow the procedures set out in G. L. c. 241, and neither party has objected to his failure to do so. His reliance on assessed values was not inappropriate, for "[i]t is well settled that [tax] assessors have a statutory and constitutional obligation to assess all real property at full and fair cash value."

*Coomey* v. *Assessors of Sandwich,* 367 Mass. 836, 837 (1975). "Fair cash value" means "the highest price that a third party would pay for the land in a free and open market" when partition occurs. *Morgan* v. *Jozus,* 67 Mass. App. Ct. 17, 22 (2006), quoting from *Delta Materials Corp.* v. *Bagdon,* 59 Mass. App. Ct. 439, 442 (2003).

Finally, there was ample basis in the record for the judge to exclude Canepari's proposed testimony about the property's value. To be sure, "[a] nonexpert owner of property may testify to its value upon the basis of 'his familiarity with the characteristics of the property, his knowledge or acquaintance with its uses, and his experience in dealing with it.' " *Epstein* v. *Board of Appeal of Boston,* 77 Mass. App. Ct. 752, 759 (2010), quoting from *Winthrop Prods. Corp.* v. *Elroth Co.,* 331 Mass. 83, 85 (1954). But whether an owner, or any other witness, is sufficiently qualified to offer an opinion as to the value of real property is a question committed to the judge's sound discretion. See, e.g., *Clark* v. *Mead Realty Group, Inc.,* 67 Mass. App. Ct. 491, 500 (2006). See generally *Commonwealth* v. *Ruiz,* 442 Mass. 826, 833 (2004), quoting from *Commonwealth* v. *Boyd,* 367 Mass. 169, 182 (1975) ("[T]he question of an expert's qualifications is for the trial judge, and [that] determination will be reversed only on an abuse of discretion or error as matter of law").

Here, the judge could reasonably conclude that Canepari was not sufficiently qualified to offer an opinion of value and that her proposed testimony was based on hearsay. Moreover, Canepari failed to make an offer of proof and, therefore, to show that exclusion of her opinion was prejudicial. See *Germain* v. *Girard,* 72 Mass. App. Ct. 409, 415 (2008).

The judgment is vacated and the case is remanded to the Probate and Family Court for further proceedings consistent with this opinion.[5]

*So ordered.*

---

[5]Pascale's motion for attorney's fees pursuant to G. L. c. 241, § 22, is denied. The case was not decided under G. L. c. 241, and the fee provision set out in G. L. c. 241, § 22, is not applicable.